**Paul O. ROWLEY, Jr., Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 184S34.

Supreme Court of Indiana.

Oct. 16, 1985.

Susan K. Carpenter, Public Defender, Melanie C. Conour, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

The petitioner-appellant, Paul O. Rowley, Jr., is before this Court appealing from the denial of his second petition for post-conviction relief. He was charged initially with two counts of armed robbery, a class B felony, Ind. Code § 35–42–5–1 (Burns 1979 Repl.), recodified as Ind. Code § 35–42–5–1 (Burns 1985 Repl.). Appellant received concurrent sentences of fifteen years. His convictions were affirmed on direct appeal in *Rowley v. State* (1979), 271 Ind. 584, 394 N.E.2d 928, and on post-conviction relief in *Rowley v. State* (1982), Ind., 442 N.E.2d 343. Appellant's sole issue in this appeal from denial of post-conviction relief is whether the admission of hypnotically related evidence at his trial violated appellant's right to confront witnesses.

These are the facts pertinent to this issue. On January 12, 1978, two armed men—one with a gun and the second with a knife—robbed the Geiser family. At 9:30 p.m. Drew Geiser was accosted by two men while he was putting his car in the garage. The men took Drew's watch and wallet and searched Drew's car. The men then followed Drew into his parents' house where they took additional money from the Geiser family and coins from Mr. Geiser's coin collection. During the course of this robbery the men threatened the Geiser family several times, stating they would kill for money. The garage sequence of this crime and the house sequence each were approximately four minutes in duration. While the Geiser house was fairly well lighted, the evidence is contradictory regarding the lighting conditions outside by the garage.

Drew testified that he told the police on January 12, 1978, shortly after the robbers left, that the knife-armed robber wore a ski cap, dark clothing, black and white tennis shoes and was a black male, 5'10"—5'11". The responding police officer, Thomas J. Winkel, testified Drew was "rather shook up and over excited at the time." Winkel talked with Mr. Geiser more than with Drew because Mr. Geiser was able to provide a better description.

Mr. Geiser gave a description of the gunman, co-defendant Cox, to Officer Virgil Vandagriff, and Vandagriff drew a composite of Cox. However, neither Drew nor his father was able to give a sufficient description of the knife-armed robber, or able to identify anyone from a photographic array shown to them at the police station. On January 18, 1978, Vandagriff hypnotized Drew. During the hypnosis session, Vandagriff interviewed Drew

about the crime events and suspect description. While under hypnosis Drew described the robber who was armed with a knife. Vandagriff then gave Drew a posthypnotic suggestion that he would retain a visual picture of the suspect. After hypnosis, with Drew's aid, Vandagriff made a composite sketch with the features of the accused, which was admitted into evidence at appellant's trial as State's Exhibit 1. The composite was based on the following description which Drew gave Vandagriff:

> [M]ale negro, eighteen years of age, 5'10", one hundred forty-five pounds, slender build, dark complexion, oval face, brown eyes, medium nose, medium lips, short brown hair, spoke in a desperate voice, was wearing a dark coat but zipped up, was hip length, was wearing dark pants and had on black tennis shoes with high tops, and had on white soles on the tennis shoes; had on a blue ski hat that had a yellow rim, or a yellow trim around it.

Subsequently two lineups were conducted on February 8, 1978. At the first lineup Drew did not identify anyone, and his mother identified Michael Daniels. At the second lineup Drew identified appellant, his father identified co-defendant Cox, and his mother did not identify anyone.

At trial Drew testified appellant wore dark clothing, high top black and white tennis shoes, and a blue and yellow ski hat. Mr. Geiser testified Drew was literally shaking after the robbers left their house. Mr. Geiser never got a good look at the robber who was armed with a knife. Mr. Geiser stated appellant could possibly be this man, but that he could not positively identify appellant as the knife-armed robber. Drew identified appellant in court as the knife-armed robber. Appellant did not make a contemporaneous objection to either the composite drawing or the identification testimony.

Kevin Edmonds, who had criminal charges pending against him, testified appellant gave an extra-judicial confession wherein appellant admitted his participation in a robbery which broadly resembled the facts of this case. Edmonds also admitted he had told the police on another occasion that appellant had been involved in an unrelated murder charge and then later recanted.

The testimony of Drew Geiser and Kevin Edmonds and the composite were the central pieces of evidence against the defendant. The police did not find any identifiable fingerprints from the crime scene; a police search did not find any weapons or recover any stolen items; and appellant did not give a confession to the police.

Appellant argues the admission of hypnotically induced evidence violated his right to confront witnesses. He maintains the trial court improperly admitted the composite sketch and identification testimony which he alleges to be products flowing from the victim's hypnosis session. Appellant therefore maintains his convictions were based entirely upon inherently unreliable evidence, as little additional evidence was presented to sustain his convictions.

Appellant did not raise this issue in his direct appeal or first petition for post-conviction relief. The State contends that the appellant has waived his right to raise this issue now, and the trial court so found. In a recent series of cases discussing fundamental error, this Court has clarified what issues may be raised under Indiana Rules of Procedure for Post-Conviction Remedies § 1. As Chief Justice Givan wrote:

> [A]ny issue set forth in a post-conviction petition must be raised within the purview of the post-conviction rules, e.g., deprivation of the Sixth Amendment right to effective assistance of counsel, or be an issue demonstrably unavailable to the petitioner at the time of his trial and direct appeal.

*Bailey v. State* (1985), Ind., 472 N.E.2d 1260, 1263. In *Bailey*, the Court concluded that a claim based on a subsequent interpretation of law constituted "an issue demonstrably unavailable at the time of his trial and direct appeal." *Bailey*, 472 N.E.2d at 1263. Although this may entitle a petitioner to present the issue, whether the subsequent interpretation of law is one

on which relief will be granted depends upon the extent to which this Court makes that interpretation retroactive. We therefore proceed to examine our decisions on hypnosis in light of principles governing retroactivity.

## A. HYPNOSIS EVIDENCE

■ In *Merrifield v. State* (1980), 272 Ind. 579, 400 N.E.2d 146, the appellant argued the victim's identification testimony was improperly admitted because the police department hypnotized the victim several days after the crime occured. This Court found an independent basis to support the identification. Moreover, the State did not offer any evidence from the hypnosis session at trial. The issue of the admissibility of hypnosis testimony and evidence obtained solely as the result of hypnosis was not presented in *Merrifield*. We subsequently held evidence derived from a hypnotically entranced witness to be inherently unreliable as not having probative value and therefore inadmissible. *Strong v. State* (1982), Ind., 435 N.E.2d 969. Such evidence should be excluded because hypnotically induced evidence is affected by confabulation, a process whereby the hypnotic subject fills in memory gaps with fantasy. The post-hypnotic subject is confident that any memory recalled is accurate and factually based, a conviction which cannot be tested through cross-examination. *Pearson v. State* (1982), Ind., 441 N.E.2d 468.

In this case, appellant argues admission of both the composite and the in-court identification violated his right of confrontation. The *Strong* court clearly held a composite which is the product of a hypnotic trance to be inherently unreliable. Admission of a hypnotically induced composite was deemed reversible error in *Strong* even though the hypnotic subject had both described the appellant and identified appellant from a photographic array before the hypnosis session. Here, Drew's pre-hypnotic description of the knife-armed robber was deemed to be so inadequate by the police that Winkel relied on Mr. Geiser for such information as he could provide,

and Vandagriff used hypnosis to assist in making the composite.

Drew's hypnosis session was not tape recorded. Assuming *arguendo* the hypnotic session was impermissibly suggestive, the inquiry is whether the State demonstrated clear and convincing evidence the in-court identification has a factual basis independent of the hypnotic session. *Strong*, 435 N.E.2d at 971; *Merrifield*, 400 N.E.2d at 149. The witness's opportunity to observe the offender and the reliability of the witness's recollection of the witness's original observation of the offender comprise the major factors determinative of an independent basis finding. *Gentry v. State* (1984), Ind., 471 N.E.2d 263. The evidence most favorable to the trial court conviction plus such uncontradicted evidence as is favorable to appellant indicate:

(1) Drew had the opportunity to observe the knife-armed robber for a total of eight minutes and was fairly close to the robber on some occasions under adequate lighting conditions; and

(2) The reliability of Drew's recollection of his original observation of the knife-armed robber is significantly affected by the notable differences in Drew's pre-hypnotic and post-hypnotic descriptions. Drew's sketchy pre-hypnotic description became substantially detailed and complete after his hypnosis session.

■ Only after hypnosis was Drew able to identify appellant as the knife-armed robber. The record does not contain that quantum of evidence necessary to establish a sufficient independent basis for Drew's in-court identification.

## B. RETROACTIVITY

■ Had appellant's trial been conducted after *Strong* was decided (June 3, 1982), it is clear both the composite and identification testimony would have been excluded as an inherently unreliable product of hypnosis and impermissibly tainted identification, respectively. The question is

whether, and to what extent, the *Strong* principles are to be retroactively applied.

Several principles guide our retroactivity analysis:

(1) The Constitution neither prohibits nor requires a new judicial rule be given retrospective effect;

(2) The retroactivity or nonretroactivity of the new rule does not automatically turn on the particular constitutional provision upon which the new prescription is based; and

(3) The extent to which the purpose of a new constitutional rule requires retroactive application is a matter of degree and is a function of the direct or incidental relationship between such purpose and the reliability and integrity of the fact finding process.

*Brown v. Louisiana* (1980), 447 U.S. 323, 100 S.Ct. 2214, 65 L.Ed.2d 159. The relevant criteria for deciding the issue of retroactivity in a particular case are: (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. *United States v. Johnson* (1982), 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202; *Stovall v. Denno* (1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; *Enlow v. State* (1973), 261 Ind. 348, 303 N.E.2d 658. The purpose to be served by the newly announced rule is the most compelling of these factors, particularly where the purpose of the new rule is to minimize the use of untrustworthy evidence and thereby enhance the reliability of convictions. *Williams v. United States* (1971), 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388. Complete retrospective application of the new criminal rule is warranted:

[w]here the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials .... Neither good faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances.

*Williams*, 401 U.S. at 653, 91 S.Ct. at 1152; *see also, Hankerson v. North Carolina* (1977), 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306; *Ivan v. New York* (1972), 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659. Where a new judicial rule only tends incidentally to improve or enhance the reliability of the truth-finding process, retrospective application may not be warranted:

It is quite different where the purpose of the new constitutional standard proscribing the use of certain evidence or a particular mode of trial is not to minimize or avoid arbitrary or unreliable results but to serve other ends. In these situations the new doctrine raises no question about the guilt of defendants convicted in prior trials.

*Williams*, 401 U.S. at 653, 91 S.Ct. at 1152–53. The Supreme Court thus deems complete retroactive effect to be warranted where the new judicial rule is directly designed to enhance the reliability of criminal trials rather than when the rule has only a tangential relation to truthfinding at trial. *Solem v. Stumes* (1984), 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579. Similarly, this Court has previously enunciated the following rules which are pertinent to the determination to apply retroactively a new judicial rule:

(1) A rule which is merely an "evolutionary restatement of existing law [rather than a new substantive rule] is intended to have only prospective application," *Dillard v. State* (1971), 257 Ind. 282, 290, 274 N.E.2d 387, 391; (2) Where there is direct evidence of petitioner's guilt, the prior decision would not be applied retroactively; however, a situation which is "fraught with lack of due process [may] require the granting of a post-conviction relief." *Prophet v. State* (1974), 262 Ind. 312, 314, 315 N.E.2d 699, 701; and

(3) The alleged flaw which affects the factfinding process must directly and persuasively affect the determination of defendant's guilt or innocence. *McPhearson v. State* (1974), 262 Ind. 468, 318 N.E.2d 355.

We conclude that the present case falls under the last of these rules. Unlike the situation in *Merrifield,* the hypnotized witness did not have any independent basis for the identification of the defendant or the composite drawn. Moreover, the evidence produced by hypnosis in this case is not like the evidence which Justice Pivarnik, dissenting in *Strong,* described as "a relatively insignificant part of the evidence" which "could not be said to have influenced the jury so strongly that it could not reasonably have been determined that the jury would have found the defendant guilty with or without that particular evidence." *Strong,* 435 N.E.2d at 972.

■ Here, the only two pieces of direct evidence were the testimony of Drew Geiser ("the accused had a knife") and the testimony of Kevin Edmonds ("They said they did a robbery, sticking up a red headed boy and his parents"). Edmonds testified while facing at least four or five charges of armed robbery and one of first-degree murder, although it appeared that there had not been any promises made to him by the State at the time of his testimony. Under these facts, we conclude that the impermissibly tainted evidence was such a central part of the case against the defendant that we should apply the *Strong* rule retroactively and grant appellant's petition. We note that this petition was filed so late in the defendant's period of incarceration on his original conviction that he may well have finished serving the sentence which was imposed. Nevertheless, the judgment of the trial court is reversed, and the cause returned for such additional proceedings as may be necessary.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.