Alton Leon TAYLOR, Appellant,

v.

STATE of Indiana, Appellee.

No. 62S00–8604–CR–397.

Supreme Court of Indiana.

Dec. 3, 1987.

Gerald R. Thom, Jasper, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal stemming from a trial by jury. Appellant was convicted of the crimes of confinement, attempted criminal deviate conduct, robbery, attempted murder, and rape. He received a sentence of 20 years for robbery and a sentence of 50 years for each of the other convictions. All sentences were ordered to run consecutively for a total sentence of 220 years.

There are five issues presented for review: (1) whether the State's delay in providing the criminal history of one of its witnesses entitled appellant to a continuance; (2) whether the trial court erred by failing to grant appellant a continuance to subpoena radio transcripts and in denying appellant's motion for change of venue due to prejudicial pre-trial publicity; (3) whether the trial court erred by permitting the State to introduce into evidence photographs of a line-up which included the court's bailiff; (4) whether the trial court erred by failing to grant appellant a mistrial or a continuance when the State's chief witness testified she had been hypnotized; and (5) whether the trial court erred in its sentencing determination.

These are the facts from the record which tend to support the determination of guilt: On May 10, 1981, Marcia Sanders was driving from St. Louis, Missouri en route to St. Mary's, Kentucky. Along the way she picked up a hitchhiker. After driving for approximately two and one half hours, the hitchhiker put a knife to Sand-ers's side and forced her to exit Interstate 64 near St. Croix, Indiana. While verbally threatening her and still holding the knife at her side, he directed her to an abandoned barn. He then forced her into the barn, attempted anal intercourse, and raped her. Following the rape he beat her severely with a board, left her for dead and drove away in her car. Sanders managed to make her way to the road after regaining consciousness and was found by a passing motorist. On November 14, 1981, Sanders's car was located in Tell City, Indiana in appellant's possession. He was arrested on a charge of possession of stolen property as well as on other unrelated charges. Sanders positively identified appellant at a line-up and at trial as the hitchhiker who attacked her.

A former cell mate of appellant's, Anthony Wallace, to whom appellant had admitted his guilt, also testified at trial. His detailed recitation of appellant's actions on May 10, 1981 closely paralleled Sanders's testimony.

I.

The State did not provide the defense with the criminal history of Anthony Wallace until October 2, 1985, 6 days prior to the October 8, 1985 starting date of appellant's trial. His request for a continuance due to the State's delay was denied.

Appellant asserts prejudice from the denial of a continuance. He urges that the geographic distance between appellant's place of incarceration and his attorney's office, plus the lack of private telephone facilities for appellant's use at the jail, prevented appellant from adequately and thoroughly discussing matters concerning Wallace's testimony with his attorney.

■ The granting or denial of a continuance is primarily a matter for the trial court. A trial court's decision to deny a motion for continuance will be reviewed only for an abuse of discretion. *Downer v. State* (1982), Ind., 429 N.E.2d 953. Granting continuances in order to allow more time for preparation is generally not favored in criminal cases and will only be

granted in furtherance of justice. *Miller v. State* (1978), 267 Ind. 635, 372 N.E.2d 1168.

■ At trial, counsel for appellant thoroughly explored Wallace's criminal history and his motives for testifying. There is no basis in the record or in this situation from which one could reasonably deduce that additional time for investigation and consultation would have better equipped defense counsel to conduct this cross-examination. Consequently, no error is shown.

## II.

During *voir dire,* it became apparent that many of the prospective jurors had heard radio broadcasts concerning the advent of the trial or had read newspaper articles published shortly before the trial. Appellant requested a continuance in order to subpoena the tapes of the radio broadcasts. He also requested a change of venue due to the prejudicial pre-trial publicity.

When several of the initial panel of prospective jurors acknowledged hearing the radio broadcasts or reading the newspaper articles, the trial judge separated all prospective jurors into two groups, those who had been exposed to pre-trial publicity and those who had not. He allowed the attorneys to conduct individual interviews in the court's chambers of all those potential jurors who had been exposed to the publicity.

■ The fact that the majority of the jurors had some knowledge of the case is not alone sufficient to conclude prejudice to the defense. *Drollinger v. State* (1980), 274 Ind. 5, 408 N.E.2d 1228. While jury impartiality is essential, mere knowledge of the case does not preclude that impartiality. So long as a juror can set aside any pre-existing impression or opinion and render a verdict based on the evidence presented, the integrity is preserved.

■ The cautious and extensive *voir dire* process instigated in this case served to weed out those potential jurors who might be unable to conform to the mandates of impartiality. Counsel was aware of the information contained in the newspaper articles and could effectively question jurors regarding those articles. The gener-

al subject of the radio broadcasts was known and had the radio broadcasts contained something of a nature not covered in the newspaper articles, this information should have surfaced from the interviews with the numerous persons who had heard the broadcasts. The motions were properly denied.

## III.

■ As part of its case-in-chief, the State introduced photographs of a line-up conducted prior to trial and at which Sanders identified appellant as her attacker. One of the individuals participating in that line-up was the bailiff of the trial court. Appellant urges that these photographs should not have been admitted as the presence of the bailiff unnecessarily drew the jury's attention to the photographs, causing them to place undue emphasis on these exhibits. While the bailiff should not make a habit of participating in line-ups as he should be aware that a criminal action arising from the line-up may well end up in his courtroom, we see nothing prejudicial in his inclusion. The presence of the bailiff did not reflect on appellant's guilt or innocence nor did it prejudice him. The jury had ample opportunity to view the bailiff in person if they so desired.

## IV.

Appellant specifically asked the State in a motion to produce evidence, for "a statement in writing by the Prosecuting Attorney for the 70th Judicial Circuit whether hypnosis has been used or attempted to be used on any witness in the investigation of the offense charged against the Defendant." The State specifically responded "No hypnosis has been used or attempted to be used on any witness in the investigation of the offense charged against the defendant."

At trial, toward the end of her testimony, Sanders responded during cross-examination that she had been hypnotized by the Maryland State Police and that a composite drawing was a product of that hypnosis. Defense counsel promptly requested a mistrial due to the State's false representation that no hypnosis had been utilized or in the

alternative a continuance to enable the defense to explore the circumstances surrounding the hypnotic session and to become further aware of the legal implications of hypnosis. Both requests were denied. The trial court determined that the fact of Sanders's hypnosis was harmless error.

The prosecutor asserted at trial that in part of the discovery provided the defense a police report prepared by Officer Symon contained the following "[A]n artist and hypnotist interviewed victim and attached drawing was made" and that this statement was sufficient to put appellant on notice that the State's affirmative representation that no hypnosis had occurred was in error. We find no merit in this approach. The prosecutor and the state allege that the false answer was inadvertent and that only Officer Symon had knowledge of the hypnosis. We refuse to find that this statement in a police report should have alerted defense counsel that further inquiry was necessary but did not so alert the State. If we impart knowledge to the defense, then the State would be equally responsible, making the error in response malicious rather than innocent as claimed. Consequently, it is only fair to deal with this subject under the assumption that until Sanders revealed the hypnosis during trial, all parties were unaware it had occurred.

Assuming arguendo that the hypnotic session was unduly suggestive, the question presented is whether or not there was clear and convincing evidence of a factual basis for Sanders's identification of appellant which was independent of that experience. Sanders picked up a hitchhiker in the daylight and they rode together and carried on a conversation for over two hours. They stopped for gas and bought some junk food. They stopped in a restaurant where Sanders ate while the hitchhiker had a soft drink and talked with her. The hitchhiker told Sanders his name was "Leon", which is appellant's middle name. After the assault, Sanders described her attacker in detail. She made special mention of his acne scarred face and the red trim on his denim jacket. Sanders was shown numerous photographs of suspects but identified none of them as the assailant. She was never shown a picture of appellant. While she was recovering from her injuries at her mother's home in Maryland she was apparently hypnotized and a composite drawing was made during the hypnosis. The Maryland police sent the composite drawing to Indiana but no further information from the session was passed on. Neither the Indiana nor the Maryland police suspected appellant. It is difficult to believe that an improper suggestion or procedure resulting in Sanders's identification of appellant would be possible when the police had no clue themselves as to the identity of her attacker. Appellant was arrested not as a result of the composite drawing or Sanders's description but because he was driving Sanders's car, which was stolen by her assailant.

In many situations involving a crime, the victim has no contact with the perpetrator until the onset of the crime. Fear and apprehension may inhibit their ability to recollect the appearance of the assailant, or the lighting conditions or brevity of the contact may make positive identification impossible. However, in the case before us, Sanders had no reason to believe, for several hours, that she was in any danger from her companion. They spent a relaxed time indulging in small talk. The lighting conditions were good inside the car as well as in the restaurant where Sanders ate. Sanders had not identified anyone prior to her identification of appellant.

Appellant asserts that *Rowley v. State* (1985), Ind., 483 N.E.2d 1078 should control this situation. In *Rowley*, the individual saw the assailant for a total of eight minutes, in varied lighting. His original description was extremely vague and police reported that he was visibly upset at the scene of the crime. He was not able to make an identification prior to the hypnosis. While Sanders did not identify appellant prior to her hypnosis, the implication that she could only do so after hypnosis is not valid. Sanders was unable to identify appellant because she was never shown a picture of him to identify nor was he presented in a line-up. The police had no clues as to the identity of the perpetrator. It is very possible that had appellant dis-

posed of Sanders's car or had he remained outside the State of Indiana, he might never have been identified. We must agree with the trial judge that even if the hypnotic session was unduly suggestive, the hypnosis of Sanders was harmless beyond a reasonable doubt. The testimony of Sanders was sufficient to present clear and convincing evidence that she had an independent factual basis for her in court identification. Even without Sanders's identification, the State had a strong case against appellant. He was found in possession of Sanders's car, he matched her description, he owned an unusual denim jacket with red trim, and he confessed his crime to a fellow prisoner, revealing details that only the perpetrator could know.

## V

Appellant asserts that the trial court used the wrong statute in making its sentencing determination. The trial court used the criteria contained in I.C. 35–38–1–7, in effect at the time of trial, rather than the criteria contained in I.C. 35–4.1–4–7, in effect at the time the crimes were committed. While appellant is correct that the proper sentencing criteria were those in effect at the time of the crime, the statute utilized by the trial court was in effect simply a recodification of the previous statute. Appellant argues that in using the recodified statute, the trial court did not consider subpart 7 of the former statute. That subpart reads: "The person is likely to respond affirmatively to probation or short-term imprisonment." The identical subpart appears verbatim as subpart 7 in the new statute. Therefore, the trial judge inherently considered this possibility in his sentencing determination and in fact discussed the same with appellant at the time of sentencing. There is no indication that the judge did not consider all the criteria listed in the former statute and we consequently find no error.

The convictions are affirmed.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.