Barrett, Circuit Judge, Dissenting.
I dissent from the majority opinion because it fails to give the Indiana Court of Appeals the deference required by 28 U.S.C. § 2254(d). Under that provision, a federal court may grant habeas relief only if the state court proceedings (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The majority holds that the Indiana Court of Appeals' decision satisfies § 2254(d)(1). I disagree. Even though I think that the undisclosed evidence of Carey's hypnosis constitutes a Brady violation, it was neither contrary to, nor an unreasonable application of, clearly established federal law for the Indiana Court of Appeals to conclude otherwise.
I.
The Indiana Court of Appeals' decision to deny Sims's petition for post-conviction relief was not "contrary to" clearly established law as determined by the Supreme Court of the United States. A decision is "contrary to" clearly established federal law if it (1) "applies a rule different from the governing law set forth in our cases" or (2) "decides a case differently than [the Supreme Court] ha[s] done on a set of materially indistinguishable facts." Bell v. Cone , 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). To apply this standard, we must first consider what rule has been clearly set forth in the Supreme Court's caselaw.
The three elements of a Brady violation have been clearly established, including the materiality prong at issue here. See, e.2727g. , Goudy v. Basinger , 604 F.3d 394, 400 (7th Cir. 2010). Evidence is material if there is "a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." Turner v. United States , --- U.S. ----, 137 S.Ct. 1885, 1893, 198 L.Ed.2d 443 (2017) (internal quotation marks and citation omitted). A "reasonable probability" is one that "undermines confidence in the outcome of the trial." Kyles v. Whitley , 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (internal quotation marks omitted) (quoting United States v. Bagley , 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ). In addition, the holding in Giglio v. United States , 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), that impeachment evidence "falls within the Brady rule," is likewise clearly established. See Bagley , 473 U.S. at 676, 105 S.Ct. 3375 ; Collier v. Davis , 301 F.3d 843, 848 (7th Cir. 2002).
The majority's first error comes in its description of the general rule that Brady establishes with respect to impeachment *1093 evidence. The Supreme Court has not held, as the majority would have it, that " '[w]hen the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of the evidence affecting credibility' justifies a new trial under Brady ." Maj. Op. at 1088 (emphasis added) (citing Giglio , 405 U.S. at 154, 92 S.Ct. 763 ). The italicized phrase is the majority's; the full sentence from Giglio is this: "[w]hen the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of the evidence affecting credibility falls within [ Brady 's] general rule." See Giglio , 405 U.S. at 154, 92 S.Ct. 763 (quotation omitted). Again, that general rule asks whether the undisclosed evidence is material. And materiality-whether the evidence at issue is exculpatory or impeaching-is always a fact-intensive inquiry, as the sentences in Giglio immediately following the one that the majority quotes make clear:
When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within [ Brady 's] general rule. We do not, however, automatically require a new trial whenever a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict. A finding of materiality of the evidence is required under Brady .
Id. at 154, 92 S.Ct. 763 (emphasis added) (internal quotation marks, citations, and alteration omitted). In other words, impeachment evidence related to a key witness is material only if it undermines confidence in the verdict. See id. at 154-55, 92 S.Ct. 763 (suppressed evidence of bias that called into question a key witness's entire testimony was material); see also Kyles, 514 U.S. at 441-42, 115 S.Ct. 1555 (undisclosed contradictory statements by a key witness that arguably pointed to a suspect other than the defendant were material because they "substantially reduced" or "destroyed" the witness's value). To be sure, impeachment evidence related to a key witness is more likely to be material than impeachment evidence related to a bit player. But contrary to the majority's suggestion, the Supreme Court has never announced a hard-and-fast rule requiring a new trial when non-cumulative evidence related to the credibility of an important witness is suppressed. Even when it comes to a star witness, Giglio and its progeny require courts to evaluate whether the suppressed evidence is in fact material-not merely to assume it.
The majority's second error lies in its assertion that the Indiana Court of Appeals confused the Brady materiality standard with the Indiana Rules of Evidence. The Supreme Court has explained that "[a] federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases...." Bell , 535 U.S. at 694, 122 S.Ct. 1843. According to the majority, the state court made that very error here-it says that the state court concluded that the suppressed evidence was not material because Carey's identification would still have been admissible under state law. Maj. Op. at 1089. But that fundamentally misreads the state court opinion. The Indiana Court of Appeals did explain that "[e]vidence derived from a hypnotically entranced witness" is inadmissible under state law unless "the State ... demonstrate[s] by clear and convincing evidence that the witness's 'in-court identification has a factual basis independent of the hypnotic session.' " Ind. Ct. App. Op. at 7-8 (quoting Rowley v. State , 483 N.E.2d 1078, 1081 (Ind. 1985) ). Yet it did not analyze Sims's Brady claim under that standard. When it moved to the Brady issue, the court squarely identified and applied Brady .
*1094 The Indiana Court of Appeals began by describing the trial court's post-conviction decision, which held that while the evidence of hypnosis satisfied the first two prongs of Brady because it was both favorable and suppressed, it failed to satisfy the third prong because it was not material. See Ind. Ct. App. Op. at 8. The trial court fully recited the Brady standard, including the rule that "[e]vidence is material if there is a reasonable probability that disclosure would have changed the result in the proceeding." After discussing the evidence in detail, the trial court concluded: "The evidence presented provides sufficient confidence in the verdict. The record reveals that Carey was able to identify Defendant before hypnosis. Thus the Court finds that the hypnosis disclosure would not have changed the outcome, and its nondisclosure did not amount to a Brady violation."
The Indiana Court of Appeals reviewed this reasoning, setting much of it forth verbatim, and agreed that the evidence was not material given the counterbalancing strength of the admissible identification: Carey got a good look at the assailant, gave a detailed description that matched Sims, and identified Sims in multiple pre-hypnosis photo lineups. It concluded that "the findings of fact and the record as a whole support the post-conviction court's determination that it is not reasonably probable that the outcome of Sims's trial would have been different had Carey's hypnosis been disclosed." Ind. Ct. App. Op. at 10. That is the Brady standard. See Turner , 137 S.Ct. at 1893 (explaining that evidence is material if there is "a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different" (quotation omitted) ). The majority is plainly correct that " Brady 's materiality standard is not an admissibility test," Maj. Op. at ----, but neither the Indiana Court of Appeals nor the trial court treated it like one.
A state court decision is "contrary to" clearly established law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] ha[s] done on a set of materially indistinguishable facts." Bell , 535 U.S. at 694, 122 S.Ct. 1843. Here, there is no question that the state court applied the Brady materiality standard, and there is no attempt to identify a Supreme Court case with materially indistinguishable facts. Thus, the state court decision was not "contrary to" clearly established federal law.
II.
The majority's stronger argument is that the Indiana Court of Appeals unreasonably applied Brady 's materiality prong to this set of facts. Section 2254(d)(1) prohibits us from approaching this question de novo; thus, we cannot simply ask whether the suppressed evidence of hypnosis creates a reasonable probability of a different result. Instead, we must ask the question that § 2254(d)(1) demands: whether it was unreasonable for the state court to conclude that evidence of hypnosis did not create a reasonable probability of a different result.
This is a high bar: the state court's application of federal law "must be objectively unreasonable, not merely wrong; even clear error will not suffice." Woods v. Donald , --- U.S. ----, 135 S.Ct. 1372, 1376, 191 L.Ed.2d 464 (2015) (per curiam) (internal quotation marks and citation omitted). A prevailing habeas petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."
*1095 Harrington v. Richter , 562 U.S. 86, 103, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) ; see also Kidd v. Lemke , 734 F.3d 696, 703 (7th Cir. 2013) ("We must deny the writ if we can posit arguments or theories that could have supported the state court's decision, and if fairminded jurists could disagree about whether those arguments or theories are inconsistent with Supreme Court holdings."). The Indiana Court of Appeals' conclusion that the evidence of hypnosis was not material-and thus that failure to disclose the evidence did not amount to a Brady violation-does not rise to that level.
The majority finds fault in multiple aspects of the Indiana Court of Appeals' reasoning. Many of its concerns, however, are objections to the facts found by that court. And without clear and convincing evidence that the state court was wrong, its factual determinations are not open for debate. See 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").[1]
Notably, the majority almost entirely discounts the facts that support the Indiana Court of Appeals' conclusion that the suppressed evidence was immaterial. The state court found that Carey looked directly into the face of Sims in fair, outside lighting at the time of the shooting; offered a detailed description of Sims on-scene; identified Sims in a photo array at the hospital emergency room; and identified Sims again two days later in a photo array at the prosecutor's office. The description and identifications are crucial because they all occurred well before Carey underwent a session of hypnosis and thus bolster the reliability of the in-court identification despite the evidence of hypnosis.
The majority is particularly skeptical of the Indiana Court of Appeals' finding that Carey identified Sims three times in photo lineups before hypnosis. Maj. Op. at 1091-92. It claims that "significant doubt was cast on these lineups by the fact that Carey testified that he was initially only shown a single picture." Id. But there was a factual dispute on this point that the Indiana Court of Appeals resolved: it concluded that Carey was presented with a picture lineup in the hospital emergency room.[2] The majority has not attempted to demonstrate by clear and convincing evidence that this finding is wrong-nor could *1096 it, because Sims has not attempted to do so. Thus, we must accept the state court's finding that Carey positively identified Sims in multiple prehypnosis photo lineups.
Relatedly, the majority also suggests that Carey was able to identify Sims only afterhypnosis. See Maj. Op. at 1090-91,1092; see also id. at 1085-86. In the majority's view, this conclusion is most consistent with the trial record and best explains why Carey or the prosecutor would have "felt it necessary" to undergo hypnosis at all. Id. at 1092. But just as § 2254 does not permit us to review a state court's application of federal law de novo, it also does not permit us to reweigh evidence according to our own best reading of the trial record. Both the state trial court and the Indiana Court of Appeals explicitly rejected the notion that Carey identified Sims only after hypnosis : "the contention that Carey was 'only' able to identify Petitioner following the hypnosis is at odds with other credible evidence ... in the record.... From the record of the case, Carey was able to identify Petitioner well before hypnosis." Ind. Ct. App. Op. at 6-7 (quoting the trial court); see also id. at 9-10. The majority is not free to question this finding.
After deciding for itself which facts are undisputed, the majority frames the materiality question this way: could a fairminded judge be confident in Sims's conviction where the only evidence was Sims's proximity to the scene of the crime and Carey's solid but imperfect on-scene description? See Maj. Op. at 1089-90, 1091-92 (acknowledging Sims's suspicious proximity to the scene and citing Carey's description as the only other "undisputed details"). But that framing stacks the deck by sifting out evidence on which the state court relied in applying Brady -most significantly, Carey's identification of Sims in the photo arrays. Absent clear and convincing evidence that the state court's factual findings were wrong-which again, is not something that the majority undertakes to show-we are required to take the facts as the state court found them. 28 U.S.C. § 2254(e)(1).[3]
Doing that leaves us with the following facts. Carey gave an on-scene description of the shooter that matched, in many respects, a person crouching in the bushes behind a nearby dumpster. But the match was not perfect: Carey described a person with short hair and wearing boots, and Sims was apprehended apparently wearing a hat or hood and Nikes. Carey identified Sims in multiple pre-hypnosis photo arrays and "never identified any other as his assailant." At some point, before trial, Carey underwent a single session of hypnosis to improve his memory of the event. There is no record of what happened during this session. At trial, Carey gave a more robust description of his assailant than the one given on-scene-adding details like the discoloration under Sims's eye and the patch on his jacket-but he did not contradict his initial description. He testified that his memory of certain details had improved over time. Defense counsel cross-examined Carey on all inconsistencies with and additions to his initial description of the shooter. An officer testified that, from the very beginning, Carey said that he could identify the assailant, and that Carey's description of the assailant matched Sims. The government never found the gun used to shoot Carey. The jury found Sims guilty of attempted murder.
*1097 The Indiana trial court drew two important conclusions from these facts in its post-conviction review. First, it decided that the government had proven by clear and convincing evidence that Carey's in-court identification of Sims had a sufficient factual basis independent of hypnosis. Second, the court noted that the distinctive elements of Carey's trial testimony, compared to his initial description, "were fully developed, examined and vigorously discussed in cross examination," which gave the jury the opportunity to weigh Carey's credibility regarding the differences. Given that the government would still have been able to introduce a strong, reliable in-court identification of Sims and that, in the court's view, many of the problems raised by hypnosis were already addressed by robust cross-examination, the court held that the "evidence presented provides sufficient confidence in the verdict." The Indiana Court of Appeals agreed. It emphasized the independent strength of the in-court identification and the "vigorous cross-examination" of Carey before holding that "it is not reasonably probable that the outcome of Sims's trial would have been different had Carey's hypnosis been disclosed." Ind. Ct. App. Op. at 10.
That decision does not involve an objectively unreasonable application of clearly established federal law. The state courts suggested that the undisclosed evidence would have been largely cumulative, and therefore not material, because the defense was already able to cross-examine Carey about the differences in his testimony. The Supreme Court has held that "largely cumulative" impeachment evidence is not material. See Turner , 137 S.Ct. at 1894. The majority acknowledges Turner 's holding but disagrees that the hypnosis evidence would have been cumulative. In its view, the newly discovered evidence of hypnosis would have "changed [Carey's] cross-examination quite dramatically" and "calls into question everything Carey said at trial." Maj. Op. at 1089-90, 1090-91. But neither outcome is obviously true.
Indeed, had the evidence of hypnosis been disclosed, defense counsel would have likely emphasized the dangers of hypnotically-refreshed testimony discussed in Rock v. Arkansas . See 483 U.S. 44, 59-60, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). At best, however, the effect of that argument would have been to undermine the reliability and credibility of any part of Carey's testimony that could not be traced to his memory prior to hypnosis. It was not objectively unreasonable, then, for the state court to conclude that the impeachment evidence was largely cumulative: the vulnerable parts of Carey's testimony-describing the discoloration under Sims's eye and the patch on his jacket-were already undermined by defense counsel's cross-examination stressing that such details appeared nowhere in Carey's on-scene description.
But that debate is at the periphery. Under Indiana law evidence derived from hypnosis is inadmissible. See Ind. Ct. App. Op. at 7 (citing Rowley , 483 N.E.2d at 1081 ). Thus, the question is not whether cross-examination of hypnotically-refreshed testimony would have been effective-notably, the question that Rock speaks to.[4] The question is whether with out *1098 the hypnotically-refreshed testimony, a reasonable jurist could be confident in the conviction. Acknowledging the effectiveness of defense counsel's cross-examination was one way for the state court to test this question-i.e., because the defense counsel cast substantial doubt on the reliability of the hypnotically-refreshed testimony, a reasonable jurist could be confident that the pre-hypnosis evidence and testimony drove the verdict.
As an additional ground for its immateriality decision, however, the state court considered the pre-hypnosis evidence-and admissible identification related to that evidence-in isolation and expressed confidence that the jury would have still decided to convict. The only additional boost that the evidence of hypnosis would have given Sims's defense counsel on cross-examination under these circumstances would have been to raise questions about why Carey underwent hypnosis in the first place. Certainly, the jury might have some discomfort with the fact that Carey felt the need to undergo hypnosis-as the majority does, and as I do. But the key is the reliability of Carey's identification of Sims.
Evidence of hypnosis and Carey's reduced credibility over time could not have retroactively undermined the reliability of his contemporaneous description of the events and the assailant or his multiple pre-hypnosis photo-lineup identifications of Sims. Cf. Neil v. Biggers , 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) (identifying "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness ..., and the length of time between the crime and the [identification]" as factors relevant to reliability). Nor could it have changed the fact that the police discovered Sims peering down on the scene behind a nearby dumpster. Thus, unlike the cases that the majority cites, in which the undisclosed evidence either contradicted the witness's in-court identification or shattered the credibility of a witness with no contemporaneous corroboration for his in-court identification, Carey's contemporaneous description and prehypnosis identifications were independently reliable and consistent with his in-court identification. Cf. Wearry v. Cain , --- U.S. ----, 136 S.Ct. 1002, 1004-05, 194 L.Ed.2d 78 (2016) (per curiam) (undisclosed statements suggested that the witness was attempting to frame the defendant; undisclosed evidence suggested that the witness was biased; undisclosed medical evidence suggested that it would have been impossible for the defendant to have done the things that the witness described); Smith v. Cain , 565 U.S. 73, 74-76, 132 S.Ct. 627, 181 L.Ed.2d 571 (2012) (witness's undisclosed contemporaneous statements directly contradicted the testimony supporting his in-court identification); Kyles , 514 U.S. at 441-42, 115 S.Ct. 1555 (witness's undisclosed contemporaneous statements contradicted the in-court identification).
In short, the state court concluded that the evidence of hypnosis was not only cumulative but also comparatively weak in light of the strength and reliability of Carey's prehypnosis description and identifications. That conclusion is not "beyond any possibility for fairminded disagreement." See Harrington , 562 U.S. at 103, 131 S.Ct. 770. Here, Carey's hypnotically-refreshed testimony was not "the only evidence linking [Sims] to the crime." See Smith , 565 U.S. at 76, 132 S.Ct. 627. With a solid on-scene *1099 description, multiple untainted photo-array identifications, and an in-court identification by the victim-not to mention Sims's suspicious behavior and proximity to the scene of the crime-a fair-minded jurist could be confident in the jury's verdict, even if we are not. See Kidd , 734 F.3d at 703.
* * *
Again, if I were deciding the question de novo, I would agree with the majority that the suppressed evidence of hypnosis undermined confidence in the verdict. But because I can't say that the Indiana Court of Appeals' decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," Harrington , 562 U.S. at 103, 131 S.Ct. 770, I would affirm the district court's denial of Sims's habeas corpus petition.

Though the majority does not hold, and Sims does not argue, that the state court decision was "based on an unreasonable determination of the facts" under § 2254(d)(2), some of the language in the opinion seems to at least raise the question. It is therefore worth noting that unreasonableness under § 2254(d)(2) is a very stringent standard. A factual determination is unreasonable if it is "arbitrary," Ben-Yisrayl v. Buss , 540 F.3d 542, 549 (7th Cir. 2008), but not if reasonable minds could disagree on the finding in question, Wood v. Allen , 558 U.S. 290, 301, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010). In addition, we have held that "§ 2254(e)(1) provides the mechanism for proving unreasonableness." Ben-Yisrayl , 540 F.3d at 549.

This issue was first raised when Sims moved for a mistrial after testimony from Carey in which "he indicated that he might have been shown a single picture of Sims before he was shown photo arrays which included Sims's picture." The trial court denied the motion and the court of appeals affirmed, noting that "there was other testimony and evidence to the effect that Carey had never been shown a single photograph, but was only shown arrays of six or seven photos," and that in any event, "there was a sufficient basis, independent of any improper photo display, to support the admissibility of the in-court identification of Sims." The issue arose again in the post-conviction proceedings, in which the state courts found that "when the police arrived at the hospital emergency room, they showed Carey photos of Sims and several other men, and Carey positively identified Sims as his assailant."

The majority claims that I "assail [its] opinion" by contesting its factual findings with my own. Maj. Op. at 1092. But that misses the point entirely. Section 2254 requires us to accept the facts as the state court presented them and determine whether, on those facts, the state court's legal conclusions constituted an unreasonable application of federal law. I don't contest any of the majority's factual findings, only its authority to make them.

Rock 's discussion of the dangers of hypnotically-refreshed testimony and the ineffectiveness of cross-examination on such testimony took place in the context of considering the admissibility of post -hypnosis testimony. See 483 U.S. 44, 53, 61, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (distinguishing between post-hypnosis testimony and testimony that a litigant could "prove to be the product of prehypnosis memory" for the purposes of its analysis). Notably, Rock 's holding actually offered some protection for hypnotically-refreshed-that is, derived from hypnosis-testimony. See id. at 61, 107 S.Ct. 2704 (post-hypnosis testimony is not categorically unreliable).