John R. CASE, Appellant,

v.

STATE of Indiana, Appellee.

No. 882S289.

Supreme Court of Indiana.

Jan. 17, 1984.

Jack Quirk, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Latrielle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Defendant-appellant, John R. Case, was charged by information with the murder, Ind.Code § 35–42–1–1 (Burns 1979 Repl.), of his son-in-law. A jury found him guilty as charged, and he was sentenced by the trial judge to a thirty-year term of imprisonment. In this direct appeal, he alleges that the trial judge erred by giving one of the final jury instructions and by refusing two of defendant's tendered instructions. He also claims that the verdict of the jury is not supported by sufficient evidence.

The evidence most favorable to the verdict reveals that in the late afternoon of October 7, 1981 the defendant went to the home of his daughter and son-in-law, Dixie and Rick Wade, and shot Rick in the face with a handgun as he spoke on the telephone to Dixie. Rick Wade died three days later as a result of the gunshot wound.

John Musick, a neighbor of defendant's, testified that in the early afternoon hours of October 7, 1981 defendant spoke with him about the marital problems of Dixie and Rick. Defendant first told Musick that he was going to talk to Rick to try to straighten him out, then told him that he was "going to blow the son-of-a-bitch away." At 1:30 that same afternoon, defendant telephoned Annabelle Wade, Rick's mother, complaining about the way Rick treated Dixie and exclaiming that he was going over to see Rick "and if the son-of-a-bitch don't let me in the door, I'm going to shoot through the door.... If the son-of-a-bitch don't know I mean business then, and won't listen to me, I'll shoot him and he'll wish he was dead."

At work late that same afternoon, the defendant spoke with his supervisor, Michael Reedy, about Dixie and Rick's marital problems and asked for time off from work to talk to Rick. Reedy testified that defendant appeared nervous and was allowed to leave when his machine broke down. Defendant proceeded to Dixie and Rick's house, where Rick was speaking on the telephone to Dixie. Dixie testified that she overheard the defendant tell Rick to get off the telephone. After Rick explained he

was talking to her, Dixie heard her father again harshly order Rick to hang up. Dixie next heard a fall and then heard defendant's voice on the line asking for the emergency number.

Defendant's father-in-law, Virgil Fouch, who lived next door to Dixie and Rick, testified that the defendant stuck his head in Fouch's back door and shouted "[D]ad I just shot Rick." Both men returned to the Wades' house where they attempted to give aid to Rick and summoned the police and an ambulance. Defendant spoke with several police officers, both at the scene of the shooting and at the detective offices. Officer Steven George testified that the defendant told him at the house that he had shot Rick in the nose. Defendant further related, according to Detective Mike Brumback, that he had pulled the gun from his pants, pointed it at Rick from about four or five feet away, and shot the weapon. Investigator Jack Stonebraker testified that the defendant told him he had shot Rick without cocking the gun. Rodney Davis, a firearms expert who had examined the gun used in the shooting, testified that if the weapon was not cocked it had a stiff trigger pull, requiring greater than twelve pounds of pressure to cause it to fire.

The defense presented several witnesses who testified that they were relatives, neighbors and co-workers of the defendant and that while he was known to be loud, "mouthy" and argumentative, he never followed through with any of his threatening remarks and was a good neighbor and friend. A psychiatrist who had seen the defendant several times since the shooting testified that he was a non-violent person with no malice who used his "big mouth" as a coping device. In cross-examination of the State's firearms expert, the defendant elicited testimony that the weapon might discharge accidentally when cocked, though the witness had been unable to get it to so fire after numerous attempts.

## I.

█ The defendant first argues that the trial court committed error by reading Fi-

nal Instruction Number 7 to the jury. That instruction provided:

> "An intent to kill may be inferred from the use of a deadly weapon in a manner reasonably calculated to cause death."

He claims that this instruction was not relevant and should not have been read because the defendant was charged by the information with "knowingly" and not "intentionally" killing Rick Wade.

In addition to this instruction, the court gave another final instruction defining the "knowing" level of culpability as set out in Ind.Code § 35-41-2-2 (Burns 1979 Repl.). That statute provides in part:

> "(a) A person engages in conduct 'intentionally', if, when he engages in the conduct, it is his conscious objective to do so.
>
> (b) A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so."

Even assuming it was error to give the court's Final Instruction Number 7 because defendant was charged with a "knowing" rather than an "intentional" murder, we find that error to be harmless. The "intentional" state of mind requires even greater proof than a "knowing" state, *Dixon v. State*, (1981) Ind.App., 425 N.E.2d 673, thus any error here worked to the defendant's advantage by inferentially requiring the State to shoulder a more difficult burden of proof.

## II.

Defendant next alleges that the refusal of his Tendered Final Instruction Number 2 was error. That instruction offered by the defendant was copied verbatim from Indiana Pattern Jury Instructions (Criminal) 12.13 and read:

> "The defendant has introduced evidence of his reputation for [truth and veracity] [morality] [chastity] [honesty and integrity] [being a peaceful and law-abiding citizen] [etc.]. This evidence may be sufficient when considered with the other evidence in the case to raise a

reasonable doubt of the defendant's guilt.

"However, if from all the evidence in the case you are satisfied beyond a reasonable doubt of the defendant's guilt, then it is your duty to find him guilty, even though he may have a good reputation."

■ Defendant tendered this instruction without in any way adapting or tailoring it to fit this particular case. A defendant may not tender an instruction in multiple choice form and expect the trial judge to modify it to suit the defendant's view of the evidence. This would place an intolerable burden on the trial judge. It is not error to refuse an instruction unless it ought to be given as tendered. *Beasley v. State,* (1983) Ind., 445 N.E.2d 1372; *McCormick v. State,* (1982) Ind., 437 N.E.2d 993. Defendant's Final Instruction Number 2 was inapplicable as tendered, and there was no error in refusing to give it.

### III.

Defendant also contends that the trial judge erred by refusing to read his Tendered Final Instruction Number 5 concerning the defense of accident which duplicated Indiana Pattern Jury Instructions (Criminal) 10.21 and which read:

"The defense of accident has been raised as an issue in this case.

In general, prohibited conduct may be excused when it is a result of accident.

This defense contains three elements:

1. The conduct must have been unintentional; or without unlawful intent or evil design on the part of the accused;

2. The act resulting in injury must not have been an unlawful act;

3. The act must not have been done recklessly, carelessly or in wanton disregard of the consequences. ·

The State has the burden of disproving this defense beyond a reasonable doubt."

Defendant claims that he was entitled to this instruction because he introduced evidence that he did not intend to kill Rick Wade and that the weapon he used was defective.

■ Where the evidence does not support the giving of an instruction, however, it is not error to refuse that instruction. *Gutierrez v. State,* (1979) 270 Ind. 639, 388 N.E.2d 520; *Lamb v. State,* (1976) 264 Ind. 563, 348 N.E.2d 1. We find that in this case the issue of the defense of accident was not presented by the evidence since there was *no* evidence of at least the third element of the definition contained within the instruction. Defendant did not present or elicit any evidence that his act of removing the gun from his pants and pointing it at Rick Wade was not done recklessly, carelessly or in wanton disregard of the consequences. Thus the trial judge committed no error by refusing to give defendant's Tendered Final Instruction Number 5.

### IV.

■ Defendant finally contends that there is not sufficient evidence to support the verdict of the jury. He claims there is no evidence that he "knowingly" killed Rick Wade. Our test for the sufficiency of the evidence requires that we neither weigh the evidence nor resolve questions of credibility, but look only to the evidence and the reasonable inferences therefrom which support the verdict. *Smith v. State,* (1970) 254 Ind. 401, 260 N.E.2d 558. If from that viewpoint there was evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Taylor v. State,* (1973) 260 Ind. 64, 291 N.E.2d 890; *Glover v. State,* (1970) 253 Ind. 536, 255 N.E.2d 657.

■ The "knowing" element of the charged crime refers to a state of mind which is "required with respect to every material element of the prohibited *conduct.*" (Emphasis added.) Ind.Code § 35–41–2–2(d). To "knowingly" kill is to inflict an injury upon another person resulting in his death, at the time being aware of a high probability that one is doing so. Ind.Code § 35–41–2–2(b). By its very nature a state

of mind is not objectively discernible and may only be inferred or deduced from voluntary verbal and physical conduct and surrounding circumstances. *Grassmyer v. State*, (1981) Ind., 429 N.E.2d 248. In this case, defendant made known his purpose to confront his son-in-law by telling a neighbor he was going to "blow the son-of-a-bitch away" and by telling the victim's mother he was going to "shoot him and he'll wish he was dead." He left work early, armed himself, entered the victim's house, pulled a gun from his pants, pointed it at Rick Wade and pulled the trigger. Although defendant presented evidence that he did not intend to kill Rick and that the gun might have discharged accidentally, such was for consideration by the jury. The jury was not required to be persuaded that at the time, defendant desired to bring about the actual death of Rick, and was not compelled to believe that the gun might have discharged accidentally. It could instead have credited the strong inferences from the other evidence that defendant "knowingly" killed Rick Wade. There was sufficient evidence for the jury to find that defendant was guilty beyond a reasonable doubt.

Defendant's conviction is affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.