**Michael STATON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 49S00–8605–CR–421.

Supreme Court of Indiana.

June 9, 1988.

Nancy L. Broyles, McClure, McClure & Kammen, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

A jury found defendant-appellant Michael Staton guilty of two counts of kidnapping, class A felonies; two counts of robbery, class B felonies; one count of criminal deviate conduct, a class A felony; and one count of criminal confinement, a class D felony. The trial court sentenced defendant to fifty years on each of the kidnapping counts, twenty years on each of the robbery counts, fifty years on the criminal deviate conduct count, four years on the criminal confinement count, and ordered the sentences served concurrently. In this direct appeal, defendant presents two issues for review:

1) sufficiency of the evidence to support defendant's conviction for the robbery of G.B.; and

2) whether the trial court erred when it permitted the State to introduce evidence of uncharged criminal activity.

The evidence, viewed most favorably to the trial court's judgment, reveals that on the evening of December 20, 1984, G.B. and T.D. went to see a friend at the Raceway Lanes bowling alley in the 500 Shopping Center on West 16th Street in Speedway. At about ten p.m. or ten-thirty p.m., as the two young women returned to their car from the bowling alley, a man later identified as defendant approached G.B. from behind, grabbed her, placed a knife to her throat, and ordered T.D. to surrender her car keys. After forcing both young women into the front seat, defendant drove the three of them from the shopping center parking lot to a nearby abandoned carport, where he pulled the vehicle inside. Defendant grabbed both purses of the young

women, rummaged through them, and then dumped the contents onto the floor of the car. He then tied G.B.'s and T.D.'s hands behind their backs, after first using his knife to cut off the clothing of both young women. Still holding the knife on G.B., defendant touched her breasts and then inserted his finger into her vagina. At the same time, T.D. managed to free her hands and attempted to gain control of the knife from defendant. Her efforts proved unsuccessful, but apparently prompted defendant to break off his attack on G.B. He started the car and drove to the abandoned parking lot of the Speedway Lanes bowling alley, where he ordered the two naked young women out of the car. G.B. managed to break free and escape at this point, however, T.D. could not. Defendant forced T.D. into the trunk of the car and locked her in. A passing motorist stopped and assisted G.B. in obtaining help from the police. T.D. eventually managed to kick a small hole through a rusted portion of the car's trunk, and had squeezed her head, shoulders, and arms through the hole before she became stuck. Another passing motorist obtained help for T.D., and the police and fire departments were eventually able to cut her from the metal confines of the trunk.

At trial, the State requested that the court lift defendant's motion *in limine* and permit testimony of other crimes to establish common scheme or plan. The State argued the other crimes evidence would assist in identifying defendant as the perpetrator of the crime charged. After hearing the testimony of M.M. outside the presence of the jury, the trial court allowed the evidence. M.M. testified that on January 29, 1985, between the hours of ten p.m. and eleven p.m., she drove her car to the parking lot of the 500 Shopping Center. As she exited her car and walked across the parking lot, a man she was later able to identify as defendant approached her from behind, grabbed her, brandished a knife, and ordered her back to her car. M.M. testified that defendant took her purse and forced her to enter and start her car. M.M. testified that she was able to jump from the car and escape into a nearby bar before defendant could drive away from the parking lot with her.

### Evidence Sufficiency

This Court's standard of review for sufficiency claims is well known. In addressing the issue of sufficiency of evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223.

The information charging defendant with robbery of G.B. provides:

MICHEL J. STATON on or about the 20th day of December, A.D. 1984, at and in the County of Marion and the State of Indiana did knowingly, while armed with a deadly weapon, to-wit: A KNIFE, take from the person or presence of [G.B.] property, to-wit: UNITED STATES CURRENCY by putting [G.B.] in fear or by using or threatening the use of force on [G.B.], all of which is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana.

Defendant notes that the above quoted information alleges that defendant robbed G.B. of money. He argues that because G.B.'s purse contained only five dollars prior to the robbery, and that money was later found on the floorboard of the car by police, insufficient proof existed of an asportation.

This Court has clearly held that before a robbery or other theft-related crime is complete there must be an asportation of the property. *Thompson v. State* (1982), Ind., 441 N.E.2d 192. In *Neal v. State* (1938), 214 Ind. 328, 341, 14 N.E.2d 590, 596, we quoted the well recognized rule:

To constitute robbery there must be an asportation. In other words, it must appear that the property was taken from the possession of the victim into that of the robber. But the crime is consummated if the robber acquires possession of the property for even a short time, and

his subsequent disposition of the property taken is immaterial.

*See also Lacy v. State* (1978), 176 Ind.App. 428, 375 N.E.2d 1133.

■ In the instant case, the evidence clearly indicates defendant did take G.B.'s purse from her. Although he elected not to keep the money contained therein, instead dumping the contents of the purse on the floor of the car and concentrating his efforts on G.B. herself, defendant did consummate the crime and thereby satisfy the requirement of asportation by "acquir[ing] possession of [G.B.'s] property for even a short time." Defendant's disposition of G.B.'s property is immaterial. *Neal v. State, supra.* Sufficient evidence existed to support defendant's conviction for robbery of G.B.

### Evidence of Uncharged Criminal Activity

Generally, evidence of uncharged crimes is inadmissible to prove the guilt of the accused. *Pharms v. State* (1985), Ind., 476 N.E.2d 120. However, our cases recognize the "common scheme or plan" exception which permits proof of identify by showing the defendant committed other crimes with identical *modus operandi:*

> The State may prove identity by showing that the similarities between the two crimes are so strong and the method so clearly unique that it is highly probable that the perpetrator of both is the same person. * * * We require a strong showing that the different criminal actions were so similarly conducted that the method of conduct can be considered akin to the accused's signature. * * * "The acts or methods employed must be so similar, unusual and distinctive as to earmark them as the acts of the accused."

*Penley v. State* (1987), Ind., 506 N.E.2d 806, 809.

Defendant argues that the trial court erred in allowing M.M. to testify as to other crimes evidence to establish common scheme or plan. He argues the admission of the evidence served to prejudice him because: 1) his identity was not at issue;

and 2) the circumstances surrounding the instant offense and the circumstances surrounding the other crime as testified to by M.M. are so dissimilar that M.M. should not have been allowed to testify.

■ At trial, the State urged the admission of the other crimes evidence because the identity of the defendant was "not so firmly established that th[e] additional identification testimony [was] unnecessary." The State pointed out that while T.D. and G.B. had each positively identified defendant in court, G.B. had not been able to correctly identify defendant at a line-up prior to trial. Defendant did not concede the identification issue but rather offered several witnesses to support an alibi defense. Thus, defendant's identity as the victims' attacker was at issue.

The similarity between the charged offense and the criminal activity described by M.M. presents a much closer question, particularly in view of the caution expressed in *Penley:*

> Mere repetition of similar crimes does not by itself warrant admission of the evidence of those crimes under the *modus operandi* rule. In order for the *modus operandi* rule to serve its intended purpose, the inquiry must be, "Are these crimes so strikingly similar that one can say with reasonable certainty that one and the same person committed them?" Not only must the methodology of the two crimes be strikingly similar, but the method must be unique in ways which attribute the crimes to one person.

506 N.E.2d at 810. The circumstances of the charged offense were similar to that described by M.M. in the following ways: the crimes occurred at the same shopping center parking lot, at approximately the same time of night, on a week night, as the victims walked either to or from their car, and within approximately one month of each other. In both cases, the assailant approached the victims from behind, employed a knife as the weapon, robbed young women of their purses, and forced the women into their automobiles and either drove away or attempted to drive

away from the shopping center parking lot with them.

We find it unnecessary, however, to evaluate whether the present similarities comply with the "strikingly similar" standard enunciated in *Penley.* Even if erroneously admitted, evidence may be found to be harmless error where a determination of guilt is supported by substantial independent evidence. *Bates v. State* (1986), Ind., 495 N.E.2d 176. When a reviewing court can be satisfied beyond a reasonable doubt that such error did not contribute to the conviction, reversal is not required. *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.E.2d 705. From our review of the record, we conclude that the evidence of defendant's guilt was so overwhelming that the testimony of M.M., even if erroneously admitted, did not contribute to the conviction. The trial testimony clearly established that both of the victims, G.B. and T.D., clearly observed their assailant during their ordeal, and were unequivocal during their in-court identification of defendant as the assailant. The testimony of both victims was detailed and consistent. We find such evidence was so convincing that a jury could not properly find otherwise.

Judgment affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.