**Royal LEONARD, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 55A01–9012–CR–498.

Court of Appeals of Indiana,
First District.

June 17, 1991.

David D. Fairman, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Royal Leonard appeals his convictions of two (2) counts of child molesting as a Class B and a Class C felony for which he received a twenty (20) year sentence. Leonard proceeded pro se at his bench trial. He asserts he was denied his right to counsel because he 1) did not clearly and unequivocally assert his right to self-representation; and 2) did not make a knowing, voluntary, and intelligent waiver of his right to counsel. We reverse because the trial court failed to make inquiries sufficient to establish a knowing, voluntary, and intelligent waiver of the right to counsel under the guidelines promulgated in *Dowell v. State* (1990), Ind.App., 557 N.E.2d 1063, *trans. denied.*

### FACTS

The facts in the light most favorable to the judgment indicate that Leonard committed two acts of child molesting in January of 1986. He was charged for these crimes in April of 1990.

While incarcerated at a federal institution in 1989, Leonard was diagnosed as "alcoholic and schizophrenic." His doctors determined that Leonard was "mentally ill and apparently deteriorating slowly with regard to his mental status." In the preliminary stages of the present prosecution, the trial court appointed two psychiatrists to determine Leonard's competence to stand trial. Both doctors' reports indicated that Leonard was competent and/or legally responsible at the time of the alleged offenses. No hearing was held with regard to Leonard's competence to stand trial.

On June 13, 1990, Leonard wrote a letter to the trial court which read as follows:

I have asked my attorney to have a reliable witness like Mrs. Victory [sic] for when they make another tape. They are not doing this. My attorney has lied to me several times. When I asked to withdraw my guilty plea he told me that you said if I withdrew it that I would have to take a jury trial, so from here I will handle my own defense. All I need is for Ann to get those witnesses for me. I do not wish to replace him because it would take too long. It has taken to [sic] long already.

Also on June 13, 1990, Leonard's court-appointed attorney moved to withdraw his appearance and the trial court held a hearing to inquire into Leonard's request to proceed pro se.

Additional facts are supplied as necessary.

### DECISION

Leonard and the State agree that our decision last year in *Dowell v. State* (1990), Ind.App., 557 N.E.2d 1063, *trans denied,* represents a clear break in the law from earlier precedents in this area. Leonard and the State also would appear to agree that—if *Dowell* applies in the present case—its application mandates that we reverse Leonard's convictions and remand this case for a new trial. However, the State urges that we should not apply *Dowell* in the present case because *Dowell* was handed down after Leonard's trial and before his sentencing.

## I.

### Dowell

■ The Sixth Amendment to the United States Constitution guarantees to a criminal defendant the right to represent himself if he so chooses. *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562; *Dowell*, 557 N.E.2d 1063. As a prerequisite to the assertion of the right of self-representation, there must be a clear and unequivocal request to proceed pro se. *Id.*

Leonard first asserts that the trial court erred because he did not make a clear and unequivocal request to proceed pro se. We have reviewed the transcript of the hearing held below on this matter. Leonard's testimony during this hearing is at best only marginally coherent, much less clear and unequivocal. However, Leonard consistently gave affirmative responses when questioned whether he wished to represent himself. Therefore, for purposes of this opinion, we will conclude that Leonard made a clear and unequivocal request to proceed pro se.

■ Leonard next asserts that he did not knowingly, voluntarily and intelligently waive his right to counsel because the court did not fully explain to him the consequences of self-representation. The right to counsel can only be relinquished by a knowing, voluntary, and intelligent waiver of that right. *Dowell, id.* When the right of self-representation is properly asserted by a clear and unequivocal request before trial, the trial court must hold a hearing to determine the defendant's competency to represent himself and to establish a record of his waiver of the right to counsel. *Id.* The pro se defendant must be advised of the dangers of self-representation. *Id.* A waiver of the right to the assistance of counsel will not be inferred from a silent record. *Id.*

■ The waiver of the assistance of counsel may be established upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. *Id.* If there is any question as to the defendant's mental state or mental competency, the trial court must ascertain the competency of the defendant to make a knowing and intelligent waiver of his right to counsel. *Id.* If the background, experience, and conduct of the the defendant do not clearly indicate a knowing, voluntary, and intelligent waiver, the trial court must make an inquiry with reference to the following specific guidelines promulgated in *Dowell, id:*

[t]he defendant should know of the nature of the charges against him, the possibility that there may be lesser included offenses within these charges, and the possibility of defenses and mitigation circumstances surrounding the charges. The defendant should be aware that self-representation is almost always unwise, that the defendant may conduct a defense which is to his own detriment, that the defendant will receive no special indulgence from the court and will have to abide by the same standards as an attorney as to the law and procedure, and that the State will be represented by experienced professional legal counsel.

Specifically, the defendant should be instructed that an attorney has skills and expertise in preparing for and presenting a proper defense not possessed by the defendant. These include, among other things: (1) investigating and interrogating witnesses; (2) gathering appropriate documentary evidence; (3) obtaining favorable defense witnesses; (4) preparing and filing pre-trial motions; (5) preparing appropriate written instructions for the jury; (6) presenting favorable opening and closing statements; (7) examining and cross-examining witnesses at trial; and (8) recognizing objectionable, prejudicial evidence and testimony and making proper objections thereto.

Finally, the trial court should inquire into the educational background of the defendant, the defendant's familiarity with legal procedures and rules of evidence, and additionally, into the defendant's mental capacity if there is any question as to the defendant's mental state.

557 N.E.2d at 1066, 1067.

■ In the present case, Leonard was given much advice by his withdrawing at-

torney and the trial judge during the hearing held on Leonard's request to proceed pro se. Leonard's counsel explained to him the pre-trial investigation he undertakes for his clients, an investigation which would be denied Leonard if he represented himself. Counsel made sure that Leonard understood that he had not been to law school, was not an attorney, and had little experience in a court. Counsel explained his knowledge and experience would lead him to different decisions than would Leonard's. Leonard was advised that he would sink or swim on his own, and that he would not be able to blame counsel. The trial judge explained that one who represents himself has a fool for a client and that it was not to Leonard's benefit to be his own attorney. The trial judge also warned Leonard that his own questioning might open the door to otherwise inadmissible evidence which an attorney could exclude. The trial judge advised Leonard that he should trust his attorney who could decide what action is appropriate, which the attorney could not do if Leonard were to act as his own attorney. The trial judge warned Leonard that he would have to abide by all the rules as would be expected of an attorney. Finally, Leonard's counsel explained to Leonard that he, counsel, would not be able to take over representation in the middle of the case. Leonard acknowledged all of the advice given him and nevertheless indicated that he wished to proceed on his own. The trial court permitted Leonard to represent himself, permitted Leonard's attorney to withdraw, and appointed the attorney as Leonard's stand-by counsel.

The State urges that the above advisements were sufficient to effect a knowing, voluntary, and intelligent waiver of the right to counsel under the law as it existed before *Dowell, id.* We agree with the State that the trial court made a heroic effort—without the benefit of *Dowell*—to properly advise Leonard. We also agree that the advisements Leonard received during the hearing in question regarding the perils of self-representation would have been sufficient under the law as it existed before *Dowell. Kindred v. State* (1988), Ind., 521 N.E.2d 320; *Jenkins v. State* (1986), Ind., 492 N.E.2d 666; *Nation v. State* (1983), Ind., 445 N.E.2d 565; *Jackson v. State* (1982), Ind.App., 441 N.E.2d 29.

However, we must conclude that that the trial court failed to make all of the inquiries required by *Dowell.* In *Dowell*, we held that if the trial court were on notice that the defendant had exhibited unstable behavior that might militate against the conclusion that he could knowingly and intelligently waive the right to counsel, the court has the duty to ascertain the competency of the defendant to make a knowing and intelligent waiver of his right to counsel on the record. Leonard had a well-documented history of mental illness/psychosis of which the trial court was aware. The issue of whether Leonard was competent to stand trial, let alone proceed in his own defense, was raised before trial but never explored. In the hearing held on Leonard's request to proceed pro se, the trial court made no inquiry into Leonard's mental competence. Moreover, Leonard's nearly incoherent presentation at this hearing and at the trial in this matter militate against the conclusion that Leonard could knowingly and intelligently waive the right to counsel.

As stated above, Leonard had a documented history of mental illness/psychosis. Obviously, his background, experience, and conduct do not clearly indicate a knowing, voluntary, and intelligent waiver. The trial court's advisements to Leonard with regard to his decision to proceed pro se—which fail to delve into all the inquiries listed in the guidelines promulgated in *Dowell*—are insufficient to establish a knowing, voluntary and intelligent waiver of the right to counsel. Therefore, if *Dowell* applies in the present case, we must reverse and remand for a new trial.

II.

RETROSPECTIVE APPLICATION
OF DOWELL

The State urges that *Dowell* should not be applied in the present case because Leonard was tried before *Dowell* was handed down. The State concedes that Indiana follows the approach of recent federal decisions with regard to the retro-

spective application of federal appellate decisions. That is, cases pending on direct appeal or not yet final will enjoy retrospective application of federal appellate decisions which announce new rules governing criminal procedure. *Wilson v. State* (1987), Ind., 514 N.E.2d 282. However, cases pending on collateral review will not necessarily enjoy retrospective application of appellate decisions. *Daniels v. State* (1990), Ind., 561 N.E.2d 487. A case pending on collateral review will not enjoy the retrospective application of a new rule of criminal procedure announced by a federal appellate decision unless it falls into one of the recognized exceptions.[1] *Id.*

In *Griffith v. Kentucky,* (1987) 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649, the United States Supreme Court held that when it announced a new rule for the conduct of criminal prosecutions, that new rule would be applied retroactively to all cases, state or federal, pending on direct review or not yet final. In so holding, the court abandoned an earlier rule (related to the classic methodology advanced by the State and mentioned in footnote 1) that excluded the retrospective application of a new rule that represented a clear break with the past. *Id.* The *Griffith* court noted that the failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication. *Id.* The court noted further that once a new rule has been adopted, the integrity of judicial review requires courts to apply that rule to all similar cases pending on direct review and the selective application of a new rule violates the principle of treating similarly situated defendants the same.

The State asserts that "Indiana has not yet had the occasion to indicate the di-

rection it will take concerning the retroactivity of *State* as opposed to federal law." The State urges us to apply a different rule regarding the retroactive application of a state appellate opinion than we do for federal appellate opinions. The State urges us to apply the classic methodology employed in cases pending on collateral review.

■ We believe it would be illogical to apply different approaches regarding the retrospective application of new rules governing criminal procedure announced in appellate decisions depending upon whether the new rule was announced by a federal appellate court or by an Indiana appellate court. Moreover, we believe the rationale of *Griffith,* 479 U.S. 314, 107 S.Ct. 708, if not controlling, is compelling in this matter. The *Griffith* rationale applies with equal force to our own decisions as to those of the United States Supreme Court. We agree that the failure to apply a newly-declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication. We agree that the integrity of judicial review requires us to apply new rules to all similar cases pending on direct review. We agree that selective application of new rules violates the principle of treating similarly situated defendants the same.

In the present case, Leonard proceeded pro se in the same county that generated the *Dowell,* 557 N.E.2d 1063, case approximately a year earlier. We agree with the *Griffith* court that it would be illogical and would impair the integrity of our judicial review if we were to apply different rules of criminal procedure in the direct appeals of Leonard and Dowell, two similarly situated criminal defendants.

■ In conclusion, just as we give new rules of criminal procedure announced by

**1.** We will not burden this opinion with a discussion of the "recognized exceptions" in which cases on collateral review qualify for the retrospective application of federal appellate decisions. Actually, the State urges us to employ what it characterizes as the "classic methodology" to determine whether a particular case qualifies for the retrospective application of an appellate decision. The "classic methodology" is related to the "recognized exceptions" approach and involves a complex three prong test designed to examine the direct or incidental relationship between the purpose of the new constitutional rule promulgated in the appellate

decision and the reliability and integrity of the fact finding process. *Rowley v. State* (1985), Ind., 483 N.E.2d 1078. However, we need not examine either the "recognized exceptions" test set out in *Daniels,* 561 N.E.2d 487, or the "classic methodology" described in *Rowley,* 483 N.E.2d 1078, because—as will be discussed above—we hold that the principles espoused in *Griffith v. Kentucky,* (1987) 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649, for cases pending on direct review or not yet final mandate that *Dowell* be given retrospective application in the present case.

federal appellate courts retroactive application in cases pending on direct review or not yet final, we hold we must give our own new rules of criminal procedure retroactive application in cases pending on direct review or not yet final. The *Griffith* court's rationale mandates that we apply *Dowell* in the present case. Therefore, we must reverse and remand for a new trial.

Judgment reversed.

RATLIFF, C.J., concurs.

GARRARD, J., dissents with separate opinion.

GARRARD, Judge, dissenting.

I respectfully dissent. While acknowledging that the advisements given Leonard were sufficient under the decisions of our supreme court, the majority concludes that they were nevertheless insufficient under the well-intentioned but overbroad statements contained in *Dowell v. State* (1990), Ind.App., 557 N.E.2d 1063.

It does so by asserting that, "The issue of whether Leonard was competent to stand trial, let alone proceed in his own defense, was raised before trial but never explored." Additionally, it characterizes Leonard's presentation at the hearing conducted on his petition to proceed pro se as "nearly incoherent." I find the latter assertion a gross overstatement. As to the former, Leonard's counsel suggested by motion the possibility of Leonard's incompetence, and the court appointed two psychiatrists to examine him. They did, and each filed a rather comprehensive report in which he concluded that Leonard was competent when he committed the offense and was competent to stand trial and assist counsel. No further suggestion of incompetence was raised before trial.

To me this case is but another illustration of the tensions created by *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. By this I do not suggest that I disagree with *Faretta,* or an accused's right to self-representation, however foolhardy that may be. But at some point individuals should bear the responsibility of their own actions. After extensive inquiry Leonard chose to represent himself. Suppose the court had made the inquiry the majority demands. On the basis of the record it certainly would not have found Leonard incompetent. Thus, under *Faretta* it could not have refused him the right to proceed without counsel, or in reality, with only standby counsel. Nothing was to be gained by the additional burden the majority seeks to impose.

I believe that both the court and Leonard's counsel engaged in a thorough and extensive effort to advise him of the perils in the course he was choosing. He voluntarily, intelligently and knowingly chose to represent himself. I believe no more was required.

I would affirm.