**Greagree DAVIS, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 49S00–8705–CR–510.

Supreme Court of Indiana.

Sept. 1, 1992.

Alex R. Voils, Jr., J. Murray Clark, Clark Quinn Moses Clark, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

The defendant Greagree Davis was charged with Class B Burglary, Class B Criminal Confinement, Class A Rape, Class A Criminal Deviate Conduct, and Murder. The State sought imposition of the death penalty. The jury found the defendant not guilty of Criminal Deviate Conduct, but guilty on all other counts. The jurors were unable to agree upon a recommendation regarding the death penalty. The trial court, following a further sentencing hearing, ordered the death penalty. This direct appeal presents the following issues: 1) sufficiency of evidence; 2) excusal of prospective jurors; 3) limitation on voir dire of prospective jurors; 4) admissibility of past misconduct evidence; 5) admissibility of forensic evidence; 6) admissibility of hearsay evidence; 7) admissibility of telephone conversation testimony; 8) sentencing final argument; and 9) ineffective assistance of counsel. We affirm the conviction and the sentence.

### 1. Sufficiency of Evidence

The defendant makes a general challenge to the sufficiency of the evidence supporting the conviction and imposition of the death penalty. Specifically, he contends that there is insufficient evidence to prove a) that he had the requisite intent to commit a felony at the time he broke and entered the victim's house; b) that the defendant and the victim were not engaged in

consensual sexual practices; and c) that the killing was not accidental.

 In addressing the issue of sufficiency of evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223; *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. Where the verdict rests on circumstantial evidence, this Court need not find that the circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence but only that inferences may reasonably be drawn to enable the jury to find guilt beyond a reasonable doubt. *See, Robinson v. State* (1989), Ind., 541 N.E.2d 531, 532; *Myers v. State* (1989), Ind., 532 N.E.2d 1158, 1159; *Mills v. State* (1987), Ind., 512 N.E.2d 846, 848; and *Lovell v. State* (1985), Ind., 474 N.E.2d 505, 507.

The evidence supporting the verdict is substantial. The defendant was acquainted with the victim's former roommate and had visited the victim's residence on many occasions during the summer of 1983. The defendant told the roommate several times of his sexual interest in the victim. About 7:00 p.m. on April 2, 1984, the defendant knocked on the door of the victim's neighbors, asking them whether the victim lived there, and was told that that she did not. The defendant then left. Sometime after 9:00 p.m., the victim arrived home and telephoned her brother. She told him that someone had broken into her residence through a back window and had removed all the light bulbs. The victim believed that the intruder might still be present. Her brother told her to leave immediately, and assumed that she would come to his residence. When she failed to arrive as he expected, he reported the incident to the police. The responding officer did not find the victim at her residence, but found a broken window. Later investigations discovered the keys to her new car on the porch and the missing light bulbs in a waste paper basket.

On April 4, a police officer found the gagged and substantially disrobed body of the victim at the top of a ramp under a bridge near her residence. An autopsy revealed chipped teeth; broken fingernails; abrasions on the hands, chin, and knees; multiple bruises to the lips and gums; and 113 stab or puncture wounds. The stab wounds were caused by two different knives. The victim's neck evidenced manual strangulation. Seminal fluid was found in her vaginal cavity. The cause of her death was determined to be multiple stab wounds to the chest and abdomen.

The defendant told police investigators that he broke the back window of the victim's home, entered it, unscrewed the light bulbs, waited, and hid behind a door when she returned home and made a phone call. When she walked towards the door, he got behind her. With the victim's hands tied in front of her, he took her to nearby railroad tracks, under a bridge, and up a slope. At some point he gagged her. The defendant told police that he stabbed her. He described the disposal of the knife, and took police to the creek where he had dropped it while trying to wash it off. Two knives were discovered at this location. One was the victim's pastry knife and the other was a chef's knife from the victim's kitchen knife set. The defendant also admitted taking the victim's watch and later selling it.

Serological analysis of blood and seminal fluid obtained from the victim indicated characteristics representing less than one percent of the general population. The defendant's blood test results placed him within this category.

 In a burglary case, evidence of a defendant's actions after breaking is relevant in determining his intent at the time of entry. *Smith v. State* (1971), 256 Ind. 603, 271 N.E.2d 133. Here, the defendant's removal of light bulbs to avoid detection and his lying in wait for the victim provide evidence of his intent to confine the victim upon her arrival. The likelihood that a guest does not normally break into a

friend's home and conceal himself refutes the claim that on this occasion the defendant was a welcome visitor in the victim's home. The evidence is sufficient to enable a reasonable trier of fact to find the defendant guilty of burglary beyond a reasonable doubt.

█ Regarding the criminal confinement and rape, the defendant presented evidence that the victim had previously enjoyed bondage during sexual intercourse with others. For this reason, he contends that the evidence is insufficient to prove that the confinement and intercourse were not consensual and that the killing was not accidental. We disagree.

██ As a question of fact, the issue of consent is for the jury. *Roland v. State* (1986), Ind., 501 N.E.2d 1034. The intent to kill can be inferred from the intentional use of a deadly weapon in a manner likely to cause death. *Burse v. State* (1987), Ind., 515 N.E.2d 1383; *Mihay v. State* (1987), Ind., 515 N.E.2d 498.

The evidence shows that the defendant concealed himself in order to attack or abduct the victim. The victim sounded disturbed and apprehensive when she called her brother. The defendant took the victim to an isolated area. Her hands were bound. She told him that she wanted to go home. She was gagged. Eleven stab wounds were inflicted before her death. The massive brutal injuries to the head, face, mouth, hands, chest, and abdomen of the victim clearly contradict the claim of consensual confinement and bondage. Sexual intercourse is proven by the presence in the victim's vaginal cavity of seminal fluid which, to an extremely high degree of probability, came from the defendant. From the totality of evidence the jury could conclude beyond a reasonable doubt that the defendant was guilty of Criminal Confinement, Rape, and Murder as charged.

█ Regarding imposition of the death penalty, the defendant makes only the general assertion of insufficiency of evidence (Brief of Appellant at 42), and does not present any separate argument concerning the evidence or findings as to aggravating and mitigating circumstances. The court's judgment ordering imposition of the death penalty expressly concluded that the defendant did intentionally kill the victim during the course of committing the burglary, criminally confining and raping her after lying in wait. These findings encompass the statutory aggravating circumstances enumerated in subsections (1) and (3) of Indiana Code Section 35–50–2–9(b). The court expressly found no mitigating factors that could be considered, and that to the extent that any mitigating factors might exist, they were outweighed by the aggravating factors.

The evidence is sufficient to support the trial court's finding, beyond a reasonable doubt, that the defendant intentionally killed the victim while committing Burglary and Rape, and that the defendant committed the murder by lying in wait. Furthermore, the defendant does not demonstrate any inadequacy in the trial court's consideration of aggravating and mitigating circumstances, or in its imposition of the death penalty in accordance with the Indiana Code. We find no error on the issue of sufficiency of the evidence to support the imposition of the death penalty.

### 2. Excusal of Prospective Jurors

The defendant claims that the trial court erred in excusing for cause two prospective jurors for their opposition to the death penalty. He contends that the jurors, while equivocating on the imposition of the death penalty, stated they could follow the law and, therefore, should not have been excused.

The standard to be applied is found in *Adams v. Texas* (1980), 448 U.S. 38, 44, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581, 589, and expressly approved in *Wainwright v. Witt* (1985), 469 U.S. 412, 420, 105 S.Ct. 844, 850, 83 L.Ed.2d 841, 849:

[A] juror may not be challenged for cause based on his views about capital punishment *unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.* The State may insist, however,

that jurors will consider and decide the facts impartially and conscientiously apply the law as charged by the court. [Emphasis added in *Wainwright.*]

 The defendant here contends trial court error in removing for cause Mrs. Sullivan and Mrs. Lynch. After voir dire questions directed to several prospective jurors, the record reveals the following relevant passages clearly involving Mrs. Sullivan: [1]

Mr. Cook: I want you to tell me again what your position is.

Mrs. Sullivan: My position is that I can listen fairly and determine guilt, but I could not vote for the death penalty.

Mr. Cook: Okay. Under any circumstances that you can imagine uh, as have been described to you in this case?

Mrs. Sullivan: No.

Record at 549–50. The relevant voir dire colloquy involving Mrs. Lynch is as follows:

Mr. Cook: Okay. So can you answer my question one way or the other? Do you think you can follow the Court's instructions?

Mrs. Lynch: Yes.

Record at 715.

Mrs. Lynch: Uh, sitting here I've been trying to do a little bit of thinking. I've been reviewing my personality and my moral convictions. I honestly do believe that the person that is accused that God is his final judge ... so I could not myself bring judgment upon him.

Mr. Cook: Alright. So are you saying to me that there are no circumstances were you asked to consider the death penalty as an alternative sentence that you could envision that you would vote yes to impose the death penalty?

Mrs. Lynch: I could not vote yes.

Mr. Cook: Okay Are there any circumstances under which you would?

Mrs. Lynch: No sir.

Record at 728–29. The defendant argues that there was insufficient questioning to establish that these jurors were irrevocably

committed to vote against the death penalty. However, that is not the standard to be applied. There need be no ritualistic adherence to a requirement that a prospective juror make it unmistakably clear that he or she would automatically vote against the imposition of capital punishment. A juror's bias need not be proven with unmistakable clarity. *Underwood v. State* (1989), Ind., 535 N.E.2d 507; *cert. denied,* 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 206; *Rondon v. State* (1989), Ind., 534 N.E.2d 719, *cert. denied,* 493 U.S. 969, 110 S.Ct. 418, 107 L.Ed.2d 383.

There is no error on this issue.

### 3. Limitation on Voir Dire

The defendant contends that the trial court prevented him from ascertaining prospective jurors' attitudes on capital punishment. On the morning of the first day of trial, the State made an oral motion in limine. In its motion, the State sought to prevent either side from asking prospective jurors about their views on the death penalty in extreme cases, such as if "Hitler were on trial" or if their child was the victim. The trial judge agreed that neither side should begin voir dire with extreme examples and then continue with examples of either increasing or decreasing severity. The defendant claims that this ruling prevented him from asking prospective jurors whether their consideration would be affected by the defendant being black and the victim being white.

 The defendant indicates two instances where the trial judge sustained a State's objection to the defendant's questioning of a prospective juror. The trial judge sustained the objections because the defendant's questions asked the prospective jurors how they would vote in the present case. Record at 588. Questions which seek to shape a favorable jury by deliberate exposure to the substantive issues in the case are improper. *Von Almen v. State* (1986), Ind., 496 N.E.2d 55.

---

1. We are not persuaded by the defendant's assertion that the responses attributed to "Potential Juror" by the record are necessarily those of Mrs. Sullivan, and we find that her subsequent recapitulation of her position, set forth herein, reliably expresses her views.

 The ruling on the motion in limine did not prevent the defendant from asking about possible racial prejudice of prospective jurors. In fact, the defense counsel did ask the jury as a group about any such prejudice. Record at 576.

The trial court did not deny the defendant the opportunity to make reasonable inquiry regarding the prospective jurors' attitudes regarding the death penalty.

### 4. Admissibility of Past Misconduct Evidence

Acknowledging that his counsel failed to object at trial, the defendant claims that admission of two instances of his prior misconduct amounts to fundamental error. The victim's former roommate testified that in the summer of 1983 the defendant tried to sexually assault the roommate, but she was able to resist him. On redirect examination, the roommate also mentioned a prior incident in which the defendant had broken into a residence.

 The defendant correctly asserts that evidence of crimes and uncharged criminal acts is generally inadmissible to prove the guilt of the accused. *Stwalley v. State* (1989), Ind., 534 N.E.2d 229; *Staton v. State* (1988), Ind., 524 N.E.2d 6. The State contends that the evidence was admissible under either the "depraved sexual instinct" or the "common scheme or plan" exceptions to this general rule.

 The depraved sexual instinct exception allows evidence of prior acts showing the same perverted sexual instinct that is involved in the charged offense. *Miller v. State* (1991), Ind., 575 N.E.2d 272. However, this exception does not allow the admission of evidence of the prior rape of an adult woman. *Stwalley*, 534 N.E.2d 229; *Reichard v. State* (1987), Ind., 510 N.E.2d 163. In the present case, the nature of the defendant's prior attempted sexual assault upon the roommate cannot be distinguished from an attempted rape; thus, it is not admissible under the exception.

 Two branches of the common scheme or plan exception are recognized. The first permits proof of identity by showing the defendant committed other crimes with identical *modus operandi.* The second permits proof of an uncharged crime as evidence of a preconceived plan which included the charged crime. *Penley v. State* (1987), Ind., 506 N.E.2d 806. The State urges application of the common scheme or plan exception arguing only that the prior break-in occurred in the same building. This is insufficient to meet the "so strikingly similar" standard[2] required for admissibility under the *modus operandi* branch of the common scheme or plan exception. *Id.* at 810.

 While evidence of the defendant's past misconduct should not have been admitted, trial counsel's failure to object waives such error unless the admission of evidence constitutes fundamental error. *Wright v. State* (1985), Ind., 474 N.E.2d 89. Even when procedural default does not preclude asserting the claim of error, such error may nevertheless be found harmless and thus insufficient to require reversal. *Collins v. State* (1991), Ind., 567 N.E.2d 798. A finding of fundamental error results only when the error is a substantial blatant violation of basic principles rendering the trial unfair. *Hart v. State* (1991), Ind., 578 N.E.2d 336. This determination includes consideration of the potential for resulting harm. *Id.* Similarly, an evaluation for harmless error involves considering the likelihood that the questioned evidence may have contributed to the conviction. *Jaske v. State* (1989), Ind., 539 N.E.2d 14. Erroneously admitted evidence may be found to be harmless where a determination of guilt is supported by overwhelming independent evidence. *Staton,* 524 N.E.2d 6, 9; *Howell v. State* (1981), 274 Ind. 490, 493, 413 N.E.2d 225, 226; *Stevens v. State* (1976), 265 Ind. 396, 408, 354 N.E.2d 727, 735.

 As outlined in our discussion in Issue 1, the other evidence is overwhelming

---

**2.** Specifically, the inquiry must be, "Are these crimes so strikingly similar that one can say with reasonable certainty that one and the same person committed them?" *Id.*

and leads us to conclude that the erroneously admitted evidence of the defendant's prior misconduct did not amount to fundamental error. If a timely objection had been made and overruled, the error would have been harmless.

### 5. Admissibility of Forensic Evidence

The defendant asserts that the testimony of two forensic serologists regarding blood-typing test results lacked the proper foundation in that an expert must first establish the acceptance and reliability of the tests used. As the defendant failed to object at trial, he asserts that the lack of proper foundation amounts to fundamental error.

The first serologist discussed blood typing and serological test results. She stated that the methods she used were recognized in the area of forensic serology. The second serologist stated that the methods she used conformed to recognized methods in the field. The results of the tests were probative evidence that the victim had sexual intercourse with a person whose almost unique blood features were consistent with those of the defendant.

The defendant contends that the results of expert testing are admissible only if the methodology is demonstrated to have gained general acceptance in its particular field. Disclaiming any contest regarding the acceptance of general blood typing, the defendant argues that there was no specific indicia of the acceptance of "the remaining tests," (presumably the secretor-nonsecretor determinations). Brief of Appellant at 64.

■■■ The sufficiency of a foundation for expert testimony is a matter for the sound discretion of the trial court. We will reverse only for an abuse of that discretion. *Hill v. State* (1984), Ind., 470 N.E.2d 1332. Here, the expert testimony provided reasonably specific details regarding the testing process utilized and explained the basis for the resulting expert opinion. There was reference to compliance with generally accepted standards in the field. There was ample opportunity to expose any weakness on cross examination. On appeal, the defendant does not make any

showing or claim that the test methodology was in fact contrary to prevailing general acceptance. The defendant has failed to demonstrate reversible error on this issue.

### 6. Admissibility of Hearsay Evidence

■■■ The defendant claims that admission of a telephone conversation between the victim and her brother denied him a fair trial because it was hearsay, an out-of-court declaration repeated in court to prove the truth of its content.

The victim's brother testified that he received a telephone call from her on the night of the killing. He related her statements that someone had broken into her residence and had removed all the light bulbs from their sockets. When she returned to the telephone after checking on the lights, she said she believed that someone was still in her home. Understandably, her brother told her to leave immediately, but he heard nothing else from her. In the conversation, the victim sounded disturbed but not frightened. Other evidence at trial provided proof that two window panes had been broken out and that light bulbs were missing from the light fixtures at the victim's residence.

The victim-declarant's statements were not offered to show the truth of their content, but rather to show the victim's state of mind prior to the confinement. *See Dunaway v. State* (1982), Ind., 440 N.E.2d 682. Because the defendant claimed that the victim consented to the confinement and sex acts, the victim's state of mind was in issue. Her statements reflect her state of apprehension while she was at her home just prior to the crimes. Her apprehension was relevant to the issue of consent. Admission of the conversation was not error.

### 7. Admissibility of Telephone Conversation Testimony

The defendant contends that the trial court denied him fundamental due process and his right of confrontation by permitting certain State witnesses to repeat telephone conversations held with an unidentified caller who had information about the

victim. Claiming this testimony lacked the requisite foundation, the defendant argues that the witnesses should be required to identify the caller before relating the substance of the conversation. Acknowledging that he did not object at trial, the defendant asserts that the admission of the testimony constitutes fundamental error.

Two police officers testified about telephone calls they received on April 4, 1984 from a person claiming to have information about the victim. According to the first officer, the caller reported seeing the victim walking down the street with a black man who had two shiny objects in his hands. The officer did not know who the caller was. The second officer listened to the latter part of the first telephone call and later took calls from a man who identified himself as Greagree Davis. This officer recognized the caller as the person who made the first call. In a subsequent personal interview at which the second officer was present, the defendant repeated his story about seeing the victim with a black man on the night of the killing, and then he abruptly confessed to the criminal episode. The officer recognized the defendant's voice as being the same voice that made the two prior telephone calls.

The defendant is correct that a caller's identity must be established as a foundation for the admission of the content of a telephone call. *Starks v. State* (1987), Ind., 517 N.E.2d 46. Any doubt regarding the credibility of a voice identification generally goes to the weight of the evidence and not its admissibility. *Ashley v. State* (1986), Ind., 493 N.E.2d 768. Because the second officer provided the identification testimony, an adequate foundation was provided. We find no error in admitting this telephone conversation testimony.

A manager at the victim's place of employment related a telephone conversation he had with an unknown caller who had found some of the victim's personal items upon the ground in the area where the victim's body was later found. The manager opined that the caller was an adolescent black male. The defendant was a black male then in his early twenties.

Upon a proper objection, the manager's testimony regarding the phone call would have been inadmissible. However, its admission here was not a blatant violation of basic principles rendering the trial unfair. The manager's testimony regarding the comments of the unknown caller did not provide any facts not otherwise clearly shown by other evidence, including the defendant's confession to police. Admission of this testimony does not amount to fundamental error.

### 8. Sentencing Final Argument

The defendant contends that the prosecutor's final argument in the sentencing phase of his trial was highly improper and placed him in great peril in two respects.

First, he claims that the State improperly urged the jury to recommend the death penalty simply because state government had authorized it through the enactment and upholding of death penalty legislation. Citing *State v. Sloan* (1982), 278 S.C. 435, 298 S.E.2d 92, he asserts that such content in final argument is highly improper and prejudicial. In *Sloan*, the final argument had emphasized government approval of the death penalty in general and in the particular case stressing the involvement of the legislature, the governor, the arresting police officers, the grand jury, and the prosecutor. The *Sloan* court found this final argument to be improper in significant part due to the attempt "to minimize the jury's sense of responsibility for the appellant's fate." *Sloan*, 278 S.C. at 441, 298 S.E.2d at 95.

In reviewing the propriety of remarks during final argument, we first determine whether the prosecutor engaged in misconduct, and then assess whether any such misconduct placed the defendant in a position of grave peril or evinced a deliberate attempt to improperly prejudice the defendant. *Collins v. State* (1987), Ind., 509 N.E.2d 827; *Burris v. State* (1984), Ind., 465 N.E.2d 171; *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843.

The allegedly improper remarks are contained in the following passage:

[W]e've got the burden of proving the aggravating circumstances in this case to you beyond a reasonable doubt. And then you have the job of weighing the aggravating circumstances that have been proven to you against any mitigating circumstances that have been presented and then you make your decision on whether the death penalty is an appropriate penalty or not. *Is the death penalty appropriate? Well, let's stop and think about that just for a brief moment. It is the law of the State of Indiana. Uh, the congress has uh, our legislature has debated the moral issues of the death penalty. The people of the State of Indiana have legislated the death penalty into law. The governor has signed it and it is on the books. And it is an alternative punishment. And that's why we're here.* Now the death penalty has not been instituted for every murder case. That's why we have this entire list of aggravating circumstances.... *Now, uh, should we decide uh, whether the legislators at this point, or is it our prerogative to take into our own hands and decide that the legislators and the people of the State of Indiana don't know what they're talking about.*

Record at 949–51 (emphasis added). The defendant contends that the portions of argument shown emphasized in the foregoing passage were highly improper and placed him in great peril. There are similarities between these final argument comments and those condemned in *Sloan.* When considering the comments in context, however, the jurors here were not being asked to abandon their sense of responsibility. This argument does not constitute misconduct.

 The defendant also contends that the prosecutor's final argument was improper because it touched on the value of the victim's life to family and loved ones, contrary to *Booth v. Maryland* (1987), 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440. However, *Booth* and its rationale were expressly overruled and rejected in *Payne v. Tennessee* (1991), 501 U.S. ——, 111 S.Ct. 2597, 115 L.Ed.2d 720. As a newly de-

clared constitutional rule regarding the conduct of criminal prosecutions, *Payne* should be retroactively applied to all cases pending on direct review. *Griffith v. Kentucky* (1987), 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649; *Wilson v. State* (1987), Ind., 514 N.E.2d 282; *cf. Daniels v. State* (1990), Ind., 561 N.E.2d 487 (retroactivity in cases pending on collateral review); *see also Leonard v. State* (1991), Ind.App., 573 N.E.2d 463.

### 9. Ineffective Assistance of Counsel

The defendant claims that his trial counsel was deficient in not objecting to the following: 1) testimony on the telephone conversations of two police officers and the victim's manager; 2) testimony on the defendant's past misconduct; 3) forensic serology evidence; 4) the victim's telephone conversation with her brother; and 5) the prosecutor's comments during final argument. We have determined that no error occurred regarding the latter three points, preventing their consideration here.

 Reversal for ineffective assistance of counsel is appropriate in cases where a defendant shows both (a) deficient performance by counsel and (b) resulting prejudice from errors of counsel so serious as to deprive the defendant of a trial whose result is reliable. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. A claim of ineffective assistance must identify the claimed errors of counsel, so that the court may determine whether, in light of all circumstances, the counsel's actions were outside the range of professionally competent assistance. The proper measure of attorney performance is reasonableness under prevailing professional norms. It shall be strongly presumed that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight. Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffectiveness of counsel. *Id.; Burr v. State* (1986), Ind., 492 N.E.2d

306; *Jackson v. State* (1985), Ind., 483 N.E.2d 1374; *Price v. State* (1985), Ind., 482 N.E.2d 719; *Seaton v. State* (1985), Ind., 478 N.E.2d 51.

 As discussed above, we find no merit in the defendant's claims of error regarding the forensic serology evidence, the victim's telephone comments to her brother, the alleged lack of foundation for the police officers' testimony regarding the telephone calls from the initially unidentified caller, and the prosecutor's final argument. Timely objection by trial counsel would have properly been overruled. With regard to the failure of counsel to object to the past misconduct testimony and the manager's testimony regarding telephone remarks from an unknown caller, we conclude that these errors do not establish ineffective assistance of counsel. They did not result in prejudice so serious as to deprive the defendant of a trial whose result is reliable.

The judgment of the trial court is affirmed.

SHEPARD, C.J., and GIVAN, J., concur.

DeBRULER, J., concurs with separate opinion in which KRAHULIK, J., concurs.

DeBRULER, Justice, concurring.

I vote to affirm these convictions, and, despite numerous errors in the sentencing process find on review that the lone aggravator outweighs the mitigators and that the death sentence is appropriate.

The trial court in its written judgment included the following findings with reference to the aggravating and mitigating circumstances:

1. That the defendant ... did commit the crime of Murder upon the person of ... while lying in wait in her dwelling.

3. That the Defendant ... did commit the offense of Criminal Confinement....

5. That the defendant ... did intentionally kill ... during the course of committing the burglary, criminally confining and raping ... after lying in wait for her.

7. That the Court has found no mitigating factors that could be considered.

I interpret this order as representing that the court found and weighed four distinct death aggravators, namely intentional killing-burglary, intentional killing-criminal confinement, intentional killing-rape, and intentional killing-by lying in wait.

In this case the defendant broke into the victim's house at night, removed light bulbs, armed himself with a knife from the kitchen, drank the victim's wine, and secreted himself. Appellant was well acquainted with the victim and her house, having visited it many times as a social guest. She appeared in the house, and when she sought to leave he jumped out, seized her, tied her hands, led her from the house at knife point to a bridge about a block away where he finished a pint of whiskey, removed articles of her clothing, had sexual intercourse with her, and stabbed and killed her. The length of time between the abduction and the stabbing is not proved in the evidence.

There is real difficulty here with the trial court's interpretation and application of the aggravator stated in I.C. 35–50–2–9(b)(3), "The defendant committed the murder by lying in wait." The trial court ignores the preposition "by," chosen by the legislature for this formulation, and substitutes "while" and "after" for it. The essential elements of this aggravator are watching, waiting and concealment from the person with the intent to kill, and choosing to act upon that intent with the appearance of the hapless victim. *Davis v. State* (1985), Ind., 477 N.E.2d 889. *Thacker v. State* (1990), Ind., 556 N.E.2d 1315. Because this killing by appellant occurred a considerable distance away from the house where the concealment occurred, and because it may have occurred several hours after the abduction, there is an insufficient connection or nexus to show that the murder was by lying in wait. Moreover, the trial court's finding No. 1, that appellant killed while lying in wait in the house, is patently unsupported in the record, as it is uncontroverted that the killing did not occur at the dwelling but a good distance away on an-

other street. Also, finding No. 5 is erroneous in that it misinterprets the aggravator to require only that the watching, waiting and concealment precede the act of killing in time. Clearly, more in the way of connection is required. *Davis v. State,* 477 N.E.2d at 897.

Findings Nos. 3 and 5 are contrary to law in employing as an aggravator the conclusion that appellant intentionally killed during the course of criminally confining. The crime which the jury was given in its sentence recommendation instructions and the crime used by the trial court in sentencing is that of criminal confinement, established by I.C. 35–42–3–3. There is no such death aggravator. An intentional killing while committing kidnapping, I.C. 35–42–3–2, is an aggravator, however, that crime was not charged or included in instructions.

The remaining aggravator, i.e., killing intentionally in the course of a rape, I find properly found and supported by the evidence. Appellant was twenty two years of age. The circumstances surrounding this killing include a beating, physical choking, and the use of at least three separate weapons: two different knives and a needle. The weight of this aggravator is in the high range.

The trial court found no mitigating factors. I disagree. Appellant was incessantly drunk at this period of his life. When placed on probation a few months before this murder for a burglary committed while intoxicated, he was determined an alcoholic in need of treatment. All four psychiatrists, while finding no mental illness or disturbance, deemed his history of drinking excessively to be at least credible. I find this condition to be a mitigator having a low range value.

Appellant's conduct following the killing included immediately identifying himself to the police and telling them and others a fanciful and incredible story about having seen the crime. He thusly made himself an immediate major suspect. Upon modest interrogation, he confessed. I find this conduct to be a mitigator having a low range value.

Appellant has no significant history of prior criminal conduct. His recent felony conviction was for breaking into the other side of the double that the victim occupied, and did not extend further. As a juvenile he had a true finding of delinquency, but was placed on probation and showed a satisfactory adjustment. I find this mitigator to be in the medium range.

The jury was unable to unanimously recommend the death penalty for appellant. I would grant this fact mitigating value in the low range.

Appellant's crime, character, and background is similar to those considered in *Woods v. State* (1989), Ind., 547 N.E.2d 772, and *Johnson v. State* (1992), Ind., 584 N.E.2d 1092. Woods was nineteen, Johnson was twenty, and appellant was twenty-two. Woods stabbed an elderly neighbor in his home, killing him and stealing his property. Johnson beat an elderly woman in her home, killing her, stealing her property and burning the house down. Appellant stabbed his victim with three different instruments, choked her, and violated her person sexually, while she was bound and gagged. The weight of the aggravator in this case is greater than in *Woods* and *Johnson.*

Woods was suffering from a borderline mental disorder, while Johnson was a longtime abuser of drugs and alcohol. Woods also received the benefit on appeal of mitigation for his lack of an adult criminal record and a turbulent childhood. The Woods and Johnson cases differ in two significant respects in the area of mitigation. In those two cases the jury made recommendations of death, whereas here the jury was unable to make a recommendation of death. In those two cases there was no conduct by Woods or Johnson which rendered them immediate major suspects, whereas here such conduct is present. Despite the presence of the additional weight of these mitigating factors in appellant's case, it is my judgment that the death penalty is not arbitrary or capricious, is not manifestly unreasonable, and is here appropriate as it was in *Woods* and *Johnson.* The mitigators here have a greater

weight, but so also does the aggravator. The mitigators are outweighed by this lone aggravator.

KRAHULIK, J., concurs.